The City of Birmingham (the "City") appeals from a judgment entered on a jury verdict against it and in favor of the owners of seven parcels of residential property (collectively "the owners"). The judgment awarded damages for harm caused by floods the owners said were caused by *Page 442 
negligence on the part of the City. We affirm.
The present action was commenced on December 13, 1996, against the City by 11 plaintiffs, namely, Christopher Leberte and Sandra Leberte; Larry Teston and Carrie Teston; Henry Sutherland and Ollie Sutherland; Albert Speed; Esther Hogeland and O.B. Hogeland; and Victor Coleman and Faye Coleman. The complaint contained the following pertinent allegations:
 "6. The City of Birmingham has assumed the duty and is under a responsibility under the law to design, maintain, and construct adequate and reasonable stormwater drainage and flood control measures for the Community.
 "7. As a result of the channelization of water onto plaintiffs' property and the inadequate and insufficient drainage and flood control systems for the Community, the plaintiffs' homes and real property [have], within the past two years, sustained damage and plaintiffs' right to the peaceful use and enjoyment of their property has been interfered with. Flooding events have occurred on at least six occasions during the six month period preceding the filing of this suit and despite knowledge in the past of the City, no repairs have been performed to the system. The flooding is continuing in nature. Plaintiffs aver that each flooding event is a separate occurrence and injury.
". . . .
 "9. Plaintiffs aver that the City . . . negligently breached [its] duty to the plaintiffs by failing to design, maintain, or construct a reasonable and adequate drainage system in the Community. Said defendant breached [its] duty to plaintiffs by negligently or wantonly failing to exercise reasonable care in conducting such activities [which breach combined and] contributed to cause the flooding conditions and the diversion of surface water, mud, and debris onto plaintiffs' property."
(Emphasis added.) The complaint contained four counts, namely, (1) a count alleging negligence, (2) a count alleging nuisance and trespass, (3) a count seeking damages for inverse condemnation, and (4) a count seeking injunctive relief. The plaintiffs sought compensation for "diminution in the value of their real property, physical damage to their land and structures, mental anguish, embarrassment, and damage to . . . personalty." On January 9, 1997, the plaintiffs amended their complaint to add as an additional plaintiff Joseph Hardmond, who "assert[ed] all claims as set forth in the original complaint."
The City moved to dismiss the action on various grounds, including the ground that the claims of a number of the plaintiffs had already been adjudicated in Leberte v. City of Birmingham
(Jefferson Circuit Court, CV-95-2946, April 26, 1995) ("LeberteI"). The trial court denied this motion. Subsequently, the City answered the complaint, raising a defense based on the statute of limitations. Still later, the City filed an amended answer, again asserting that the plaintiffs' claims were barred by "all applicable statutes of limitations."
On July 14, 1998, the City moved for a summary judgment; in its motion, it renewed its argument that the claims of some of the plaintiffs, namely, those of the Lebertes, the Testons, and the Sutherlands, had been adjudicated in Leberte I. On September 17, 1998, the trial court granted in part the City's summary-judgment motion. In this connection, the trial court's order stated, in part:
 "A number of plaintiffs filed this present action of December 13, 1996, against the City of Birmingham and fictitious defendants. An almost identical action, [Leberte I], had resulted in a judgment in favor of the plaintiffs for property damage and mental anguish, all of which aggregated $90,000.00. These judgments were in favor of Christopher A. and Sandra Leberte, Larry and Carrie *Page 443 
K. Teston, and Henry and Ollie Sutherland against the City of Birmingham. The Lebertes, the Testons and the Sutherlands had previously been compensated for a cause of action which was a `single occurrence' within the meaning of Sec. 11-93-2, Code of Alabama. The defendant cited Carson v. City of Prichard, 709 So.2d 1199 [(Ala. 1998)], which held that the `occurrence' that triggered liability in this case was the overall failure of the Board to remedy the problems stemming from its sewage system and, although there were numerous incidents of sewage overflow, the failure of the Board to remedy the overflow was a single `occurrence' within the meaning of Sec. 11-93-2. In Home Indemnity Co. v. Anders, 459 So.2d 836 [(Ala. 1984)], the Court held that, '. . . for the purpose of Sec. 11-93-2, all injuries that stem from one proximate cause are the result of a single "occurrence.'" . . . Inasmuch as the causes of action are virtually the same as pleaded, this court holds that there is a single occurrence and summary judgment is granted to the defendant, the City of Birmingham and against Christopher A. and Sandra Leberte, Larry and Carrie K. Teston, and Henry and Ollie Sutherland."
(Emphasis added.)
The Lebertes, the Testons, and the Sutherlands moved for a "reconsideration" of the partial summary judgment. On October 21, 1998, the court granted their motion. It entered an ordervacating the summary judgment in favor of the City, reasoning that "events that take place at separate times are not a single occurrence."
During the trial of the cause, the City renewed its contentions (1) that the claims of all the plaintiffs were barred by the statute of limitations and (2) that the claims of the Lebertes, the Testons, and the Sutherlands were barred by their recovery in Leberte I. The trial court overruled the City's motions for a judgment as a matter of law and submitted the claims to the jury, with the following pertinent instructions:
 "[I]f the plaintiff reasonably satisfied you by the evidence that the defendant undertook to maintain a drainage system, or operate a drainage system and control the drainage of surface water affecting [the] plaintiffs' propert[ies], [it] would have the duty to maintain or operate that drainage system with reasonable care. If the plaintiff reasonably satisfied you by the evidence that the defendant negligently maintained or operated the drainage system, then defendant would be liable for any damage proximately caused by assessing negligence."
(Reporter's Transcript, at 687-88.) The jury returned a verdict in favor of all 12 plaintiffs, in the aggregate of $142,500.[1]
The trial court overruled the City's posttrial motion for a judgment as a matter of law or for a new trial. The City appealed, reiterating its statute-of-limitations and res judicata
arguments. More specifically, it contends that all the plaintiffs' claims are barred by two statutes, namely, Ala. Code 1975, §11-47-23 and § 11-93-2, either separately or in interaction. Those sections provide in pertinent part:
Section 11-47-23:
 "Claims [against a municipality] for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred."
Section 11-93-2:
 "The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. . . . Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property *Page 444 
arising out of any single occurrence."
(Emphasis added.)
The City also contends that the jury's verdict in favor of two of the plaintiffs, namely, Esther and O.B. Hogeland, was not supported by the evidence. We first address the City's arguments based on the statutes.
 I. Statutory Bar
It is undisputed that all the plaintiffs in this case suffered flooding to their property that occurred more than sixmonths before the plaintiffs commenced this action. The plaintiffs contend, however, that they also suffered flooding that occurred within that six-month period. No evidence in the record indicates that the plaintiffs gave the City notice of their claims other than through the filing of the complaint initiating this action and the complaint initiating the action in Leberte I, and the plaintiffs do not contend that they did. The plaintiffs concede that § 11-47-23 bars their recovery for instances of flooding that occurred more than six months before they commencedthis action. Brief of Appellees, at 12. Indeed, the City requested, and received, the following jury instructions:
 "The defendant contends that the plaintiffs are not entitled to recover in this case for damages which occurred prior to June 13, 1996, because any claim for damages occurring before that date are barred by the statute of limitations. The burden is on the plaintiffs to reasonably satisfy you by the evidence that the damages claimed occurred after June 13, 1996."
No party contends that the jury failed to follow these instructions.
The syllogism of the City's argument is as follows: (1) The multiple instances of flooding of which each plaintiff complains constituted but one "occurrence" within the meaning of § 11-93-2; (2) the multiple instances of flooding resulted from a single proximate cause, namely, the City's failure to "design, maintain, and construct adequate and reasonable stormwater drainage and flood control measures for the Community"; (3) the multiple instances of flooding arose out of a single cause of action; (4) each plaintiff's cause of action accrued on the date of the firstinstance of flooding; (5) § 11-47-23 required the plaintiffs to file a claim with the City within six months of the accrual; (6) no such claims were made; and, therefore, (7) all claims arising out of the City's failure to "design, maintain, and construct adequate and reasonable stormwater drainage and flood control measures for the Community" are forever barred.[2] The plaintiffs argue, however, that each instance of flooding represented a separate occurrence, or, at least, represented a separate, compensable injury giving rise to a new cause of action. The question, therefore, is whether, or under what circumstances, multiple instances of flooding may constitute separate compensable injuries so as to avoid the consequences of the City's syllogism?
The dispositive rule has been often and aptly stated as follows:
 "The theory of law as argued is well sustained if applicable. We may restate the rules as follows: For an abatable nuisance the cause of action does not arise until the harmful consequences occur, and each occurrence or recurrence of such damages constitutes a separate cause of action. Alabama Great So. R.R. Co. v. Shahan, 116 Ala. 302, 22 So. 509; *Page 445 Sloss-Sheffield Co. v. Mitchell, 161 Ala. 278, 49 So. 851; Crawford v. Union Cotton Oil Co., 202 Ala. 3, 79 So. 299. But for an injury by a permanent and unabatable condition the damages are estimated on the hypothesis of an indefinite continuance of the nuisance, and thus affecting the permanent value of the property. In such event, one may not recover in successive suits, but his damages are awarded in solido in one action. Sloss-Sheffield Co. v. Mitchell, supra; Crawford v. Union Cotton Oil Co., supra.
 "The principles of the above cases as now controlled by what is section 235 of the Constitution [of Alabama 1901] apply to cities. Section 235 of the Constitution makes a city liable for just compensation for the damages which accrue from `the construction or enlargement of its works, highways, or improvements.' Under this section changes in the grade of a street and other improvements of it working damage to adjacent property [are] held compensable as for a permanent injury. Birmingham v. Evans[, 221 Ala. 381,] 129 So. 50; Eufaula v. Simmons, 86 Ala. 515, 6 So. 47; Avondale v. McFarland, 101 Ala. 381, 13 So. 504; Batterton v. Birmingham, 218 Ala. 489, 119 So. 13.
 "Likewise, after the improvement is complete the city is responsible for the careless and negligent manner in which it is maintained by it. Birmingham v. Crane, 175 Ala. 90, 56 So. 723; Birmingham v. Greer, 220 Ala. 678, 126 So. 859; City Council of Montgomery v. Gilmer, 33 Ala. 116, 70 Am. Dec. 562.
 "So that we take it that when a city in the exercise of its duty adopts a system of drainage to care for the rainwater and constructs storm sewers or ditches for that purpose, especially one of the size here considered, it would be treated as of such character as to be embraced in section 235, and could not ordinarily be abated, but it would subject the city to liability for such compensation as is contemplated by the Constitution. But for the negligent maintenance of such sewers and ditches resulting in damages, the liability would not necessarily be controlled by the nature of the structure. The damages for the construction of the improvement [are] as though it were permanent for that it is not abatable. But for an improper or negligent maintenance the rule applicable to an abatable condition has application.
 "In some of the cases a single suit unites a claim under both aspects. Such suit should be conclusive of any subsequent suit for damages caused by the construction and the failure of duty to maintain as alleged in the first suit. But would not be conclusive of a subsequent suit for the wrongful maintenance at some other period of time causing a recurrence of damage, though similar to but on a different occasion from that embraced in the first."
Harris v. Town of Tarrant City, 221 Ala. 558, 560, 130 So. 83,84-85 (1930) (emphasis added).
The application of these rules is illustrated in City ofClanton v. Johnson, 245 Ala. 470, 17 So.2d 669 (1944). That case involved a bill in equity filed by Johnnie J. Johnson against the City of Clanton ("Clanton"). 245 Ala. at 472, 17 So.2d at 671. The bill alleged that Clanton had polluted Walnut Creek, which ran through Johnson's property, by discharging raw sewage into the creek less than one mile above Johnson's property. Id. Johnson sought the abatement of the discharge and recovery for damage that had "accrued within six months of the institution of [the] suit."Id. at 473, 17 So.2d at 672 (emphasis added).
Clanton challenged the equity of the bill on the basis of the predecessor of § 11-47-23, that is, Ala. Code 1940, Tit. 37, § 476, which differed from its successor statute in no material respect. In essence, Clanton argued that it had constructed the sewage system of which Johnson complained, approximately fouryears before *Page 446 
Johnson filed a claim with the municipality; that it had been operating it at all relevant times since its construction; and, therefore, that the relief Johnson sought was barred by § 476. Id. at 473, 17 So.2d at 671.
This Court disagreed with Clanton's arguments. Quoting the portions of Harris set forth above, it explained the difference between a "permanent nuisance" and an "abatable nuisance."245 Ala. at 473-74, 17 So.2d at 672-73. It stated: "`The mere fact that the city sewers were of permanent construction did not render the nuisance occasioned by them permanent also, for the municipality had the right at any time to abate it.'" Id. at 474, 17 So.2d at 669 (quoting Vogt v. Grinnell, 123 Iowa 332,98 N.W. 782 (1904)). Further, it reasoned: "[I]t is not necessary that the nuisance be created within the period of limitation prescribed by the statute." Id. at 473, 17 So.2d at 672 (emphasis added). "It is sufficient, if within that period damages accrue which areseparable and recur not from the installation of the sewerage system, but from its method of maintenance or operation which [makes] it an abatable nuisance." Id. (emphasis added). Because "some of the items of damages were separable and accrued within the six-months period of limitation, as for instance injury from vile odors and damage to [Johnson's] milch cows," the Court thus concluded that Johnson was entitled to relief. Id. at 475, 17 So.2d at 673.
This present case was not tried on the theory of negligentconstruction of a storm-water system; if it had been, it would have involved the rule regarding a "permanent" nuisance, namely, the rule that damages must be awarded, not in successive actions, but in solido. Instead, it was submitted to the jury on the theory that the City had negligently operated or maintained the system it had constructed. More specifically, the plaintiffs' evidence tended to show that the City had undertaken to maintain a storm-water drainage system, consisting of ditches and pipes to direct water away from the houses of the neighborhood. The plaintiffs' theory of recovery was that "the City allowed the ditch lines to become clogged with vegetation and debris," Briefof Appellees, at 5, and that it "failed to properly maintain the ditch lines thereby aggravating and contributing to the significant flooding events." Id. at 4.
The record contains ample evidence indicating that the City had systematically neglected or refused to remove obstructions from the ditches and pipes, and that the failure to remove them had contributed to the damage incurred by the plaintiffs within the six months preceding the commencement of this action. For example, the plaintiffs introduced the testimony of Dr. James Walters, an expert in the area of sanitary and environmental engineering. He testified as follows:
 "Q. [By plaintiffs' counsel] Now, you also examined the drainage system in relation to the amount of water that is expected to be received into this area, did you not?
"A. [By Dr. Walters] I did.
 "Q. And you saw — did you see some pipes and ditches and that sort of thing . . .?
 "A. I did see inlets going into piping. I did see, I remember, one concrete flume that someone had constructed to kind of attempt to control the flow of water.
"Q. We have been calling that the headwall.
". . . .
 "Q. Do you have an opinion as to whether the lack of maintenance has contributed to the severity of the flooding in the area?
 "A. I do, and it has. When you can see there are openings [that] are blocked by debris, when you can see that vegetation has been allowed to continue to grow in channels that should be for the transport of water, that lack of *Page 447 maintenance does contribute to the inadequacy.
". . . .
 "Q. Do you have an opinion as to whether the lack of maintenance that you have described and the inadequate drainage system that you have described [have] contributed to cause the flooding problem in the area? You may have already answered that, but I'm just covering some —
 "A. The inadequate local drainage system in the area that is flooded is going to serve that, and the inadequate maintenance of that drainage system has been causative of the flooding, has contributed to the flooding in the area."
(Reporter's Transcript, at 350-53.) (Emphasis added.) Moreover, the record contains testimony indicating that the City allowed vegetation to grow inside the ditches to a height of five feet and testimony indicating that the City had provided no observable maintenance upon the drainage ditches within two years preceeding the trial of the action.
In the language of this Court's discussion in Johnson, the fact that the storm-water drainage system was itself "of permanent construction," did not render the lack of maintenance thereof "permanent also," for the City had the right — indeed, the duty — to "abate" the nuisance created by its failure or refusal to remove obstacles from the pipes and ditches. Moreover, the total damage incurred by the plaintiffs was made up of separable items of damage, each an item of damage to their property attributable to a specific instance of flooding that occurred within six months of the filing of this action. Thus, the claims, as they were tried in this case, were not barred by the syllogism argued by the City. In other words, the plaintiffs' claims presented in this case were not barred by § 11-93-2 or by § 11-47-23 or by a combination of these sections.
In fact, the approach urged by the City would effectively absolve it of all responsibility for maintaining a storm-water system it had assumed the responsibility to provide and would shield a municipality from liability for abatable nuisances in virtual perpetuity. This was not the intent of the Legislature or of this Court.
In that connection, the City relies extensively on Carson v.City of Prichard, 709 So.2d 1199 (Ala. 1998), and Williams v.Board of Water Sewer Commissioners of the City of Prichard, [Ms. 1971899, September 17, 1999] 763 So.2d 938 (Ala. 1999), particularly as to the claims of the Lebertes, the Testons, and the Sutherlands, that had been prosecuted successfully against the City in Leberte I. The Carson and Williams cases represented successive appeals of the same action against the Water Works and Sewer Board of the City of Prichard ("the Board"). Despite a superficial similarity, those cases are not controlling authority for this case.
In Carson, this Court affirmed an award of compensatory damages in favor of, among others, Delfrey Williams, Geraldine Manuel Jackson, and Daisy Lee Robinson. 709 So.2d at 1201 n. 1;Williams, 763 So.2d at 939. The awards were for property damage and mental anguish the plaintiffs had suffered from multiple instances of "the overflow of raw sewage into their yards and homes after periods of heavy rain." 709 So.2d at 1202. Williams
was a subsequent action by Williams, Jackson, and Robinson against the Board, in which they sought "additional damages for harm caused them by sewage overflows that occurred on dates after thejury returned its verdict in the original case but before the filing of the complaint [in Williams]." Williams, 763 So.2d at 939 (emphasis added). This Court held that the subsequent action was barred by the doctrine of res judicata. It did so on the ground that all the instances of flooding of which the plaintiffs complained constituted but a "single occurrence" within the meaning of *Page 448 
§ 11-93-2; one proximate cause; and, consequently, a single cause of action for purposes of res judicata.
Those cases differ from this one in at least two important respects. First, neither Carson nor Williams involved § 11-47-23. Neither case, therefore, involved a statute-of-limitations issue.
Second, and most significantly, the plaintiffs in Williams
failed to present evidence indicating on the part of the Board a culpability that was different in any sense from the culpability involved in Carson. Indeed, the trial court in Carson refused the plaintiffs' request for an injunction requiring the Board to remedy the defects. It refused to do so on the ground that a consent judgment in another action against the Board was in effect. In that regard, this Court stated:
 "In his post-trial order, . . . the trial judge mentioned a civil lawsuit brought by the attorney general of Alabama against the Board based on the entire sewage collection system for the City of Prichard, seeking to force the Board to make repairs and address the inflow and infiltration problems that are the subject of this lawsuit. The judgment to which the parties consented in that case was entered into evidence in this case. It includes a compliance schedule, with the goal being completion of all repairs by 2002. The trial judge concluded that the problems are being remedied:
 "`The Board's efforts for the future appear to be in good faith because 1) the Board has entered into the agreement with the Attorney General to remedy the problems by 2002, and 2) the Board has earmarked $2.5 million in bonds for the project.'"
709 So.2d at 1207 (emphasis added). In other words, in light of the fact that the trial court in Carson had specifically found that the Board was making a good-faith effort to remedy the sewage problems, the plaintiffs in Williams provided no factual basis to support further actions based on an abatable-nuisance theory. Because of these important distinctions, we disagree with the City's argument that Carson and Williams require a reversal of the judgment entered in this case.
 II. Sufficiency of the Evidence
The City contends that the jury's verdict in favor of the Hogelands was not supported by the evidence. We disagree. The Hogelands live across the street from the Sutherlands. Specifically, Esther Hogeland testified as follows:
 "Q. [By the plaintiffs' counsel] And are you aware of any flooding that has taken place in the last couple of years?
 "A. [By Esther Hogeland] It floods all of the time. Every time it rains it floods.
 "Q. Now, you live over there across the street from the Sutherlands?
"A. I do.
"Q. Tell us how the flood waters get [o]nto your property.
 "A. It comes down over their property and comes into my driveway and then it spreads out. And my yard is level, so it just sits there until finally the ground soaks it up.
 "Q. Do you have any problems with water getting underneath your house?
"A. Yes, sir. I've [had] a lot of damage under my house."
(Reporter's Transcript, at 444-45.) (Emphasis added.)
Henry Sutherland testified that the City had assumed the maintenance of a storm-water system of ditches and pipes on, or around, his property. He also testified that if the pipes did not exist, then the storm water would "go all over the road there and down around the front of my house." (Reporter's Transcript, at 191.) Ollie Sutherland testified that when the ditches in, or around, her house fill up with debris, the water overflows and goes upon the Hogelands' property. The jury could *Page 449 
infer that the flooding on the Hogelands' property results, at least in part, from the City's failure adequately to maintain the ditch system on the Sutherlands' property.[3] Thus, the jury's verdict in favor of the Hogelands is supported by the evidence.
We have considered the City's other challenges to the jury's verdict, and we are unpersuaded by them. We conclude, therefore, that the trial court properly entered a judgment on that verdict. That judgment is, therefore, affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, See, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] The individual verdicts were as follows: (1) Christopher and Sandra Leberte — $34,000; (2) Larry and Carrie Teston — $22,000; (3) Henry and Ollie Sutherland — $25,000; (4) Albert Speed — $10,000; (5) O.B. and Esther Hogeland — $6,500; (6) Victor and Faye Coleman — $20,000; and (7) Joseph Hardmond — $25,000.
[2] It is well established that "the statute of limitations begins to run in favor of the party liable from the time the causeof action accrues, and the cause of action accrues as soon as theparty in whose favor it arises is entitled to maintain an action
thereon." Payne v. Alabama Cemetery Ass'n, 413 So.2d 1067, 1072
(Ala. 1982) (emphasis added) (citing Garrett v. Raytheon Co.,368 So.2d 516, 518 (Ala. 1979)). This is so, "even if at that time the full amount of damage may not be apparent." Life Ins. Co. ofGeorgia v. Smith, 719 So.2d 797, 802 (Ala. 1998) (emphasis added).
[3] In this connection, there was testimony indicating that the City owned an easement upon the Sutherlands' property for the maintenance of the storm-water system.