776 So.2d 761 (2000)
Gordon P. REICHERT et al.
v.
CITY OF MOBILE.
1981155.
Supreme Court of Alabama.
June 30, 2000.
*763 John W. Parker and Herndon Inge III, Mobile, for appellants.
Mark L. Redditt and J. Gregory Evans of Cherry, Givens, Peters & Lockett, P.C., Mobile, for appellee.
ENGLAND, Justice.
The plaintiffs are homeowners in the Greenwich Hills subdivision in Mobile. After their properties were flooded, they sued the City of Mobile, seeking damages on theories of negligent design, negligent construction, negligent maintenance, continuing trespass, and continuing nuisance, all related to the City's storm-drainage system. They appeal from a summary judgment entered in favor of the defendant City. The issues on appeal are (1) whether the plaintiffs' claims are barred by the statute of limitations and (2) whether the City proved that there were no genuine issues of material fact to be decided and that it was entitled to a judgment as a matter of law. We affirm in part, reverse in part, and remand.

Facts
The plaintiffs Ollie Cooper and Helen Cooper; Shirley H. Davis; Gordon P. Reichert and Linda J. Reichert; and Grace L. Edmisten, all own lots facing Cottage Hill Road, and their lots border one another. The plaintiff Maurice Martin's lot is at the corner of Wilshire Road and Shevlin Lane, immediately north of and adjacent to the Reicherts' property. The plaintiffs Francis D. Nolan and Donna Nolan do not live on the same block as the rest of the plaintiffs. They own the second lot from Cottage Hill on the west side of Wilshire Road.
One of the plaintiffs, Helen Cooper, purchased her home in 1968; at that time, Cottage Hill Road was a two-lane road. She testified that Cottage Hill Road was widened and elevated in 1973 or 1974. Mrs. Cooper experienced her first flood in 1981, and she experienced subsequent floods in 1982 and on May 28, 1997, January 7, 1998, and March 7 and 8, 1998.
Shirley Davis moved into Greenwich Hills in 1970. She experienced her first flood in 1981 and experienced subsequent floods on May 28, 1997, and in January 1998. She admits that after the 1981 flood had occurred she was aware that her home could potentially flood.
Mr. and Mrs. Reichert moved to Greenwich Hills in March 1979. Water entered their home in 1980, 1981, 1997, and 1998. Mr. Reichert testified that he was aware in 1980 or 1981 that his home was subject to flooding, and he testified that the City of Mobile cleaned out the drains in his neighborhood on more than one occasion before May 1997.
Ms. Edmisten moved into Greenwich Hills in 1992. She testified that she believed her home first flooded in 1995. Her home also flooded on May 28, 1997, and on January 7, 1998.
The Nolans purchased their home in April 1995. The source of their flooding is a ditch on the western end of their lot. They first experienced flooding on July 4, 1995, when water came from the drainage ditch and traveled under their back door and into their living room. Mrs. Nolan testified that after the July 1995 flood, water would come into their home every time a hard rain fell. The Nolans experienced flooding on the Wilshire Road side of their property on May 28, 1997.
Ms. Davis testified that after the May 28, 1997, flood she telephoned the City to complain about the drains getting clogged because, she said, the drain to the east of her property was "stopped up big time." She testified that she telephoned the "Action Line" several times about the drains. She testified that the City sent out a vacuum truck, and that she, Maurice Martin, and Mr. Reichert met with Bob Vogtner, the deputy director of public works, who *764 works with the City's engineering department, regarding the clogged drains.
Mrs. Cooper testified that she and the other residents would telephone the City often whenever they thought the sewer drain needed to be pumped out, but that sometimes the City would not respond.
The plaintiffs alleged (1) that the City had negligently designed, constructed and/or maintained the storm-drainage system in their neighborhood, (2) that as a result of the City's negligent design, construction, and/or maintenance of the storm-drainage system their homes and property had been flooded on numerous occasions, and (3) that the flooding events constituted a continuing trespass and a continuing nuisance.
The plaintiffs offered expert testimony from Kenneth Underwood, a licensed professional engineer. Mr. Underwood, after reviewing documents produced by the City referencing construction on and around Cottage Hill Road in 1974, testified by affidavit that in his opinion Cottage Hill Road acts as a dam and prevents the floodwater from flowing south away from the plaintiffs' homes. He also testified by affidavit that he believed Cottage Hill Road was raised in 1974 or 1975 when the City widened Cottage Hill Road from two lanes to five; he said the widening elevated the center lane of the road by 3.5 feet. Mr. Underwood also testified that he believed subsequent development of the area around the Greenwich Hills subdivision has overburdened the storm-drainage system.

Standard of Review
A motion for summary judgment is granted only when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Ala. R. Civ. P. "In order to defeat a properly supported motion for summary judgment, the plaintiff must present `substantial evidence,' i.e., `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Lewis v. Mobil Oil Corp., 765 So.2d 629, 630 (Ala.1999)(quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). "This Court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419, 420 (Ala.1996).

Discussion

I.

A.
The trial court granted the City's motion for summary judgment, concluding that the statute of limitations barred the claims alleging negligent design and trespass and nuisance because the plaintiffs had had notice of the potential negligent-design claim more than two years before they filed their complaint. The trial court held that the City's duty to maintain the storm-drainage system was a continuing duty, but found that the plaintiffs had not presented substantial evidence indicating that the City had failed to maintain the drains or indicating that any lack of maintenance had proximately caused the harm suffered by the plaintiffs. The plaintiffs argue that the trial court erred in holding that their claims were barred by the statute of limitations.
Recently, in City of Birmingham v. Leberte, 773 So.2d 440 (Ala.2000), we reiterated the law applicable in these cases, as it was first stated in Harris v. Town of Tarrant City, 221 Ala. 558, 130 So. 83 (1930):
"For an abatable nuisance the cause of action does not arise until the harmful consequences occur, and each occurrence or recurrence of such damages constitutes a separate cause of action. But for an injury by a permanent and unabatable condition the damages are estimated on the hypothesis of an indefinite *765 continuance of the nuisance, and thus affecting the permanent value of the property. In such event, one may not recover in successive suits, but his damages are awarded in solido in one action."
Harris v. Town of Tarrant City, 221 Ala. at 560, 130 So. at 84. After noting that the principle regarding abatable and unabatable nuisances was controlled by § 235 of the Constitution of 1901, which makes a city liable for damage resulting from the construction or enlargement of its works, highways, or improvements, this Court further stated:
"[W]hen a city in the exercise of its duty adopts a system of drainage to care for the rainwater and constructs storm sewers or ditches for that purpose, ... it would be treated as of such character as to be embraced in section 235, and could not ordinarily be abated, but it would subject the city to liability for such compensation as is contemplated by the Constitution. But for the negligent maintenance of such sewers and ditches resulting in damages, the liability would not necessarily be controlled by the nature of the structure. The damages for the construction of the improvement is as though it were permanent for that it is not abatable. But for an improper or negligent maintenance the rule applicable to an abatable condition has application."
Harris, 221 Ala. at 560, 130 So. at 85.
The widening and elevation of Cottage Hill Road in 1973 or 1974 was a permanent condition. Consequently, the plaintiffs' negligent-construction and negligent-design claims are barred by the statute of limitations because all of the plaintiffs sued more than two years after they had experienced their first floods after the construction. The plaintiffs would not be entitled to recover damages in a separate action based on negligent construction and negligent design for floods that occurred more than two years after they discovered their property would flood. We affirm the summary judgment as to the negligent-construction and negligent-design claims.

B.
The plaintiffs' claims alleging negligent maintenance, however, would not be barred by the statute of limitations, because each flood event is an abatable nuisance and gives rise to a separate cause of action. See Harris, supra. The floods for which the plaintiffs seek damages all came within the two years preceding the date they filed their complaint. The City of Mobile argues that all of the plaintiffs are now complaining of having suffered the same injury that they had complained of more than two years before they filed their complaint, and, because they did not file their notice of claim or their lawsuit within six months or two years, respectively, of their first flooding event, their claims are barred. We are not persuaded by this argument, for several reasons. The plaintiffs do not seek damages for property damage that occurred as a result of flooding that took place more than two years before they filed their complaint. Contrary to the City's argument, each flooding event resulted in a different injury because the plaintiffs suffered, at a minimum, the additional financial burden of having the water removed from their homes and having personal property repaired or replaced each time flooding occurred. To uphold the judgment in favor of the City would be unfair to the plaintiffs, given the fact that the plaintiffs' properties have continued to flood even after they filed their complaint. The summary judgment is reversed as to the plaintiffs' negligent-maintenance claim.

II.
Although the negligent-maintenance claims are not barred by the statute of limitations, the plaintiffs still must present substantial evidence of negligent maintenance in order to avoid the entry of a summary judgment against those claims. In other words, they must present evidence from which a jury could reasonably *766 conclude that the flooding of their property was proximately caused by the City's failure to provide appropriate upkeep for the storm-drainage system in its existing condition, see City of Birmingham v. Leberte, supra, rather than by the City's failure to correct any alleged design or construction problems with the that system, see Williams v. Board of Water & Sewer Comm'rs of the City of Prichard, 763 So.2d 938 (Ala.1999). The plaintiffs argue that the evidence before the court created genuine issues of material fact and, thus, that the court should not have entered the summary judgment for the City.
The plaintiffs argue that their negligent-maintenance claim alleges a "continuing nuisance" or a "continuing trespass." The trial court held that nothing in the facts alleged by the plaintiffs supported their claim that the City had committed repeated acts of negligence that could be termed a "continuous tort" and that would, consequently, toll the running of the statutory limitations period. We do not agree. After reviewing engineering drawings and other documents, interviewing the property owners, and reviewing photographs of the property, the plaintiffs' expert testified that the City had failed to maintain the storm-water culverts and that that failure had contributed to the flooding. One of the plaintiffs testified that the storm drain to the east of her property was "stopped up big time." The expert further testified that the City has issued additional permits for development to the north and to the west of the plaintiffs' subdivision, causing an increased discharge of surface water to be directed to the area of the plaintiffs' property. The City has not shown that there is no genuine issue as to any material fact with regard to the negligent-maintenance claims.
The summary judgment is affirmed as to the negligent-construction and negligent-design claims; it is reversed as to the negligent-maintenance claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and HOUSTON, COOK, and JOHNSTONE, JJ., concur.
MADDOX, J., concurs in the result.
SEE, LYONS, and BROWN, JJ., concur in part and dissent in part.[*]
LYONS, Justice (concurring in part and dissenting in part).
I concur in the majority opinion to the extent it affirms the summary judgment as to the negligent-construction and negligent-design claims (Part I.A.). I concur in the statement of law contained in Part I.B. dealing with the statute of limitations in the context of a claim alleging negligent maintenance. However, I cannot join that portion of Part I.B. reversing the summary judgment as to the plaintiffs' negligent-maintenance claims, because I must dissent from Part II. I do not think the plaintiffs, on their claims alleging negligent maintenance, offered sufficient evidence of a causal relationship between the injuries complained of and the conduct of the City.
SEE, J., concurs.
NOTES
[*] Note from the reporter of decisions: Justice Brown did not indicate which part of the opinion or judgment she concurred in or which part she dissented from.