MURDOCK, Judge.
Jimmy DeWayne Parks and Parks & Son Excavating, Inc., excavated approximately 50 acres of land that was owned by Jimmy DeWayne Parks’s mother and father, Judie Faye Parks and Jimmy Clyde Parks, for the purpose of developing part of the Pine Island Point subdivision on. Lake Guntersville. William C. Peak and Joyce S. Peak, landowners who owned a lakefront house adjacent to the excavated land, appeal from a judgment of the Marshall Circuit Court awarding them $2,500 in compensatory damages and $500 in punitive damages for damage that allegedly resulted from surface-water runoff from the excavation.
On October 8, 1997, the Peaks filed a complaint in the Marshall Circuit Court against Jimmy DeWayne Parks, Parks & Son Excavating, Inc., Judie Faye Parks, and Jimmy Clyde Parks (hereinafter referred to collectively as the “Parkses”).[1] The Peaks alleged that the Parkses had cleared their subdivision property of all natural vegetation, that they had changed the existing slope of their property and had diverted surface water onto the Peaks’ property, that they had caused an increase in surface-water runoff onto the Peaks’ property, that they had failed to construct an appropriate surface-water-runoff control system, and that they had not followed “best management practices” (“BMPs”) to control surface-water runoff. The Peaks alleged that, as a result of the Parkses’ excavation activity, surface-water runoff had damaged them and their lake house. The Peaks asserted claims against the Parkses based upon the theories of negligence, trespass, violation of common-law riparian rights, strict liability, private nuisance, and “wilfulness, wantonness and/or recklessness.” The Peaks requested compensatory damages, interest, and costs in the amount of $100,000 on their negligence claim; they requested compensatory damages, punitive damages, interest, and costs in the amount of $200,000 on each of their remaining claims for damages. They also requested that the trial court grant them injunctive relief by requiring the Parkses to implement appropriate safeguards to prevent, further damage to the Peaks’ property.
In January 2001, the Peaks filed an amended and restated complaint that significantly increased the amount of damages they were seeking. Specifically, the *100 Peaks requested that they be awarded compensatory damages, interest, and costs in the amount of $200,000 on their negligence claim and compensatory damages, punitive damages, interest, and costs of $1,000,000 on each of their remaining claims for damages.
In February 2001, “The Bank” foreclosed on some of the lots in the Parkses’ subdivision development; the lots had been mortgaged to The Bank by Judie Faye Parks and Jimmy Clyde Parks. Thereafter, the Parkses filed a motion to add The Bank as an indispensable party to the Peaks’ case; the trial court granted the Parkses’ motion. In May 2001, a few days before trial, Judie Faye Parks “and the other similarly situated defendants” filed a cross-claim against The Bank based upon their discovery of an alleged agreement between the Peaks and The Bank regarding corrective measures that might be taken on the lots owned by The Bank and regarding the injunctive relief that the Peaks had requested against the Parkses. In response to the Parkses’ cross-claim, the Peaks filed a motion to sever and to continue the trial of their claim for injunc-tive relief and the Parkses’ cross-claim so that the trial of their claims for damages could proceed as scheduled. After holding a hearing on the Peaks’ motion to sever and to continue, the trial court continued the trial of the Peaks’ claim for injunctive relief and the Parkses’ cross-claim. It also ordered the parties to proceed with the trial of the Peaks’ claims for damages. However, the trial court stated that it would not allow the Peaks to present any evidence of “a continuing nuisance because I think it would be extremely prejudicial to [the Parkses’] ease.”
In response to the trial court’s ruling, the Peaks stated that they would waive any claim for damages arising after February 27, 2001 (the approximate date that The Bank foreclosed on some of the lots in the Parkses’ subdivision development and several weeks after the Peaks had filed their amended and restated complaint). However, the Parkses argued:
‘Well, I think the caselaw is clear that ... they should be restricted from any time after October 8, 1997, when the claims were filed and they could have filed — they should have done something about it when the claim for injunctive relief was filed. If there was any problem, any continuing problem, they could have come to Your Honor then. I think the caselaw is clear that if they did not do that, they should be restricted to that date.”
The Peaks then argued that the Parkses had continued to work on the subdivision excavation after the Peaks had filed their complaint and that the Peaks “were hoping [the Parkses] were going to do something about it, but with every rain [the Peaks] continued to have damages.... [The Peaks] didn’t know what was going to happen up there.” Thereafter the following discussion occurred:
“THE COURT: Well, I think the issue is whether you can present evidence before this jury as to any damages that occurred after October 8, 1997 in the state of the case as it is now.
“[PEAKS’ COUNSEL]: I don’t know if a claim for damages has anything to do with whether or not we got injunctive relief or should have—
“THE COURT: Well, if you are alleging that there was a continuing nuisance occurring and you are asking for injunc-tive relief, if the claim for injunctive relief is not addressed then from that point on there is no mitigation of damages. I mean, the damages are occurring without any steps taken to stop it.
“[PEAKS’ COUNSEL]: Well, like I said, they knew there were damages to *101 our property and they were working on it, but they continued to do it wrong. And our civil engineer is going to testify that while they did finally install some BMPs, they did not maintain them which again started damages again.
“THE COURT: Well, if you are ready on the nuisance issue then the jury can certainly consider damages up to October 8, 1997 on that particular theory.
“[PEAKS’ COUNSEL]: We will withdraw our nuisance claim then.”
A three-day jury, trial was held on the Peaks’ claims. At trial, based upon the objections of the Parkses, the trial court refused to allow the Peaks to present evidence of damage that occurred after October 8, 1997. The Peaks argued that they should be allowed to offer evidence of damages that occurred after October 8, 1997, because their claim for injunctive relief had been continued and because they had withdrawn their nuisance claim. After a lengthy discussion regarding damages and the distinctions between an abatable nuisance and a permanent nuisance, the trial court denied the Peaks’ request.
At the close of the Peaks’ ease, the Parkses requested a judgment as a matter of law (“JML”) on all of the Peaks’ claims for damages. The trial court granted the Parkses’ motion for a JML on the Peaks’ wantonness claim, and the Peaks withdrew their striet-liability claim. However, the trial court denied the Parkses’ motion for a JML on the Peaks’ remaining claims, i.e., their claims based upon negligence, trespass, and violation of common-law riparian rights; it instructed the jury regarding those remaining claims and regarding compensatory and punitive damages.
The jury returned a verdict in favor of the Peaks and against the Parkses and awarded the Peaks $2,500 in compensatory damages and $500 in punitive damages. The trial court entered a judgment adopting the jury’s verdict. Although the Peaks’ injunction claim remained pending, the Peaks filed a motion for a new trial based, in part, on the alleged inadequacy of the damages awards, on the trial court’s ruling excluding evidence of damage occurring after October 8, 1997, and on the trial court’s granting of a JML against the Peaks on their wantonness claim. The trial court denied the Peaks’ motion for a new trial. The Peaks then filed a motion requesting that the trial court certify the judgment as a final judgment, pursuant to Rule 54(b), Ala. R. Civ. P. The trial court certified the judgment as a final judgment and the Peaks appealed.
The Peaks first argue that the trial court erred by refusing to permit them to introduce evidence of alleged damage to their property that occurred after October 8, 1997, the date that they filed their complaint. The Parkses’ position on this issue, both at trial and on appeal, is based on their contention that all of the Peaks’ claims essentially arise from an abatable nuisance. The Parkses argue that, where an abatable nuisance results in successive damage events to the plaintiff, each damage event represents a separate cause of action for which a new limitations period begins to run under the applicable statute of limitations. See Reichert v. City of Mobile, 776 So.2d 761 (Ala.2000); City of Birmingham v. LeBerte, 773 So.2d 440, 445 (Ala.2000); and Sloss-Sheffield Steel & Iron Co. v. Mitchell, 161 Ala. 278, 49 So. 851 (1909). The Parkses argue that, therefore, the Peaks should have been required to file a separate complaint for the damage to their land that occurred after October 8,1997.[2]
*102 The issue before the trial court, and-the issue that we must decide, is whether the Peaks, who filed their original complaint within the applicable limitations period, should have been precluded from offering evidence of subsequent damage that arose out of the same underlying conditions that were pleaded in their original complaint, particularly in light of the fact that they amended and restated their complaint to request additional damages without an objection by the Parkses. We conclude that the trial court erred as a matter of law by precluding the Peaks frorp offering evidence of damage to their land that occurred after they filed their initial complaint.
Reichert, City of .Birmingham, and Sloss-Sheffield speak to the issue whether the plaintiffs in those cases had timely filed lawsuits to recover damages for particular losses that had occurred in the past, that is, before the period covered by the applicable statute of limitations. To apply the rule applied in'those cases to losses that are suffered ujier a timely complaint has been filed would be to “turn the rule on its head.” Alabama Power Co. v. Cummings, 466 So.2d 99, 102 (Ala.1985) (refusing to apply Sloss-Sheffield, a ease decided under the common-law rules, of pleading in effect prior to the adoption of notice pleading and the liberal joinder of claims in the Alabama Rules of Civil Procedure, in a manner that would prevent the plaintiff from proving damages that occurred subsequent to the timely filing of a complaint, when the plaintiff had amended her complaint to include such damages before trial without objection); see generally Alabama Power Co. v. Gielle, 373 So.2d 851, 854 (Ala.Civ.App.1979) (noting that, in the context of a continuing trespass, a plaintiff may recover damages that occur before the filing of the complaint or subsequent thereto, even though a continuing trespass involves successive causes of action). It would also be contrary to the purpose of notice pleading, see “Committee Comments on 1973 Adoption,” Rule 8, Ala. R. Civ. P., and our rules governing the liberal joinder of claims, see Rule 18, Ala. R. Civ. P.; Hill v. Hill, 523 So.2d 425, 427 (Ala. Civ.App.1987), and it would require a multiplicity of lawsuits when one would likely suffice.[3]
In Reichert v. City of Mobile, 776 So.2d 761, the trial court entered a summary judgment against the plaintiffs as to certain claims alleging negligent maintenance by the defendant of its property that resulted in the flooding of the plaintiffs’ land. The Supreme Court reversed the trial court’s judgment, saving the plaintiffs’ claims from the operation of the statute of limitations for the very reason that the claim “would not be barred by the statute of limitations, because each flood event is an abatable nuisance and gives rise to a separate cause of action.” 776 So.2d at 765 (emphasis added). The Supreme Court concluded its analysis of the issue by noting: “To uphold the judgment in favor of the [defendant] would be unfair to the plaintiffs, given the fact that the plaintiffs’ properties have continued to flood even after they filed their complaint." Id. (em *103 phasis added). The same can be said in the present case.[4]
Based on the foregoing, we conclude that the trial court erred as a matter of law by not allowing the Peaks to present evidence of damage caused by surface-water runoff that occurred after October 8, 1997.
The Peaks also argue that the trial court erred by granting the Parkses’ motion for a JML on their wantonness claim. A JML is proper if “during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evi-dentiary basis for a reasonable jury to find for that party on that issue.” Rule 50(a), Ala. R. Civ. P.
“When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present ‘substantial evidence’ in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).”
Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999).
Section 6-ll-20(b)(3), Ala.Code 1975, defines “wantonness” as “[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.” In Alfa Mutual Insurance Co. v. Roush, 723 So.2d 1250 (Ala.1998), our Supreme Court stated:
“ Wantonness’ has been defined by this Court as the conscious doing of some act or the omission of some duty, while *104 knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala.1994). To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff. Joseph v. Staggs, 519 So.2d 952 (Ala.1988).”
723 So.2d at 1256.
The Peaks offered evidence that neighboring landowners had complained to Jimmy DeWayne Parks, who was the vice president of Parks & Son Excavating, Inc., and who had performed much of the excavation work on the property, about the potential for damage to their properties during the excavation process. The Peaks also introduced evidence that Jimmy De-Wayne Parks ignored the neighbors’ complaints and stated that he would do as he pleased with the property. Further, the Peaks introduced evidence that Jimmy Clyde Parks and Judie Faye Parks authorized the work performed by Jimmy De-Wayne Parks on their property and that Jimmy DeWayne Parks attempted to perform most of the subdivision excavation himself, although he had “never done this kind of work before” and admittedly had received no advice regarding the appropriate installation of BMPs to control surface-water runoff. The Peaks also introduced evidence that, after Jimmy DeWayne Parks was made aware of the surface-water runoff that his excavation work had caused, he repeatedly failed to implement appropriate and sufficient BMPs to control the runoff and, as a result, the Peaks suffered damage.
We have carefully reviewed the record. Viewing all of the evidence in the light most favorable to the Peaks, including the evidence discussed above, and entertaining such reasonable inferences as the jury would have been free to draw, we conclude that the Peaks presented substantial evidence that the Parkses were aware that their failure to implement appropriate BMPs during their subdivision excavation activity would likely result in injury. We further note that the trial court prevented the Peaks from introducing evidence of some of the Parkses’ actions that were taken after October 8, 1997, by its ruling on the Peaks’ right to introduce evidence of damages. Accordingly, the trial court erred by dismissing the Peaks’ wantonness claim.
In light of the foregoing, it is unnecessary for us to address the Peaks’ argument regarding the alleged inadequacy of the damages awards. The trial court’s judgment is reversed, and the cause is remanded for a new trial on the Peaks’ claims of negligence, trespass, wantonness, and the violation . of common-law riparian rights.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, J., concur.
THOMPSON, J., concurs in the result.
PITTMAN, J., concurs in part and concurs in the result in part.

. The Peaks' complaint also named as defendants Jimmy & DeWayne, Inc., Heniy M. Taylor, and various fictitiously named parties. In the Peaks' amended and restated complaint, they dismissed Jimmy & DeWayne, Inc., Henry M. Taylor, and all fictitiously named parties.

. The Parkses also argue that the Peaks did not make an offer of proof regarding the *102 damage that allegedly occurred after October 8, 1997. However, an offer of proof is not necessary where the court has ruled broadly that evidence supporting a particular fact which the party is seeking to establish is inadmissible. See Killingsworth v. Killingsworth, 283 Ala. 345, 354, 217 So.2d 57, 65-66 (1968).

. Indeed, in the present case, the parties prepared for trial by conducting discovery that included the depositions of witnesses regarding each flood event at issue, i.e., those that occurred both before and after the filing of the complaint.

. We also note that the Peaks did not allege that all their damages arose from an abatable nuisance or a recurring wrongful condition. Instead, they alleged and introduced evidence that the Parkses had also changed the slope of their property, had cleared the property of vegetation, and had made other permanent changes that resulted in the wrongful diversion of water onto the Peaks’ property and that the Parkses had repeatedly been unable to remedy that problem. In other words, some of the Peaks’ alleged damages arose out of permanent changes created by the Parkses' excavation and those changes continued to cause damage even after the Parkses had attempted to abate the problem; the fact that the Parkses might also have negligently or wrongfully failed to abate those or other problems that they created did not convert the Peaks' entire action into one complaining only of an abatable nuisance. See City of Birmingham, 773 So.2d at 445 (noting that the negligent construction of a drainage system invokes the rules applicable to a permanent nuisance, but negligent maintenance of a drainage system invokes the rules applicable to an abatable nuisance); Bradley & McWhirter, Inc. v. Conklan, 278 Ala. 395, 397, 178 So.2d 551, 553 (1965) (holding that damage caused by recurrent flooding from a negligently constructed drainage system constituted a single cause of action).