PER CURIAM.
M.B. Canton Company, Inc. (“Canton”), appeals from a summary judgment of the Mobile Circuit Court in favor of the Board *1285 of Adjustment of the City of Mobile (“the Board”). We affirm.

Facts and Procedural History

Canton owns a parcel of real property that is next to a parcel of real property owned by Scott Callahan and Jacqui Callahan. One of the structures on the Callahan property was a pool house, which was also partially situated on the Canton property, pursuant to an easement.[1] The pool house was classified under the Mobile zoning ordinance as a nonconforming structure because it did not meet the setback requirements of the ordinance. The pool house was damaged in Hurricane Katrina in August 2005. The Callahans sought to restore the pool house and entered into negotiations with the City of Mobile (“the City”) for a building permit. Canton responded to the Callahans’ efforts by filing a lawsuit in the Mobile Circuit Court, alleging that the Callahans’ easement for the pool house had been extinguished. After Canton filed its lawsuit, the City agreed to hold the permitting process for the restoration of the pool house in abeyance until after the lawsuit had concluded.
On October 17, 2008, the circuit court entered a judgment in favor of the Calla-hans, determining that the easement for the pool house had not been extinguished. The October 17, 2008, judgment also stated that,
“[i]f the [Callahans] desire to remedy the damage resulting from Hurricane Katrina, they shall promptly proceed with and complete the permitting process within 120 days. There was evidence at trial about the possible impact of new building codes, and [the Calla-hans] are authorized to update the pool/ guest house so as to comply with any new codes, provided that they do not materially alter the character of the easement. [The Callahans] shall under no circumstances cause the footprint of the pool/guest house to be increased; If necessary permits are obtained, [the Callahans] are to commence and complete the permitted work in a reasonable time, as opposed to deferring the work for any period of time. The foregoing time frames shall be automatically extended if there are post-judgment or appellate proceedings in this case, or if there is litigation over the permitting process, to the extent of any resulting delay that is not attributable to [the Callahans’] unwillingness to proceed as directed.”
Canton appealed the October 17, 2008, judgment to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975. This court affirmed the circuit court’s judgment, without an opinion. M.B. Canton Co. v. Callahan (No. 2080439, September 25, 2009), 58 So.3d 858 (Ala.Civ.App.2009) (table). Canton then petitioned our supreme court for the writ of certiorari, which that court denied on January 15, 2010.
Following the conclusion of Canton’s lawsuit, the Callahans renewed their application for a building permit with the City. The Callahans’ building-permit application included plans to increase the height of the pool house to comply with regulations promulgated by the Federal Emergency Management Agency (“FEMA”). On March 19, 2010, the City’s Urban Planning Department issued a building permit to the *1286 Callahans for the restoration of the pool house. Canton then appealed to the Board, challenging the Urban Planning Department’s decision to issue the building permit to the Callahans.
The Board held a hearing on Canton’s appeal, at which Canton was represented by counsel.[2] The Callahans were also present at the hearing before the Board. At the hearing before the Board, Canton argued that the zoning ordinance requires that, in order to restore a nonconforming structure, the owner must apply for a building permit within one year of the occurrence of the damage and must complete construction within two years. Canton argued that the Callahans had not met those time requirements. Canton also argued that, although the zoning ordinance allows a party to apply to the Board for an extension of those deadlines, the Callahans had not applied to the Board for an extension under the zoning ordinance. Thus, Canton argued, the Callahans had abandoned the pool house and, consequently, the Urban Planning Department had erred in issuing the Callahans a building permit to restore the pool house. The Board upheld the issuance of the building permit to the Callahans. Canton appealed the decision of the Board to the circuit court for a trial de novo.
Canton moved the circuit court for a summary judgment in its favor. In its motion for a summary judgment, Canton argued that the Callahans had not met the requirements of the zoning ordinance because they failed to obtain a permit within one year of the date of the damage to the pool house and failed to complete construction within two years of that date. Canton also alleged that the Callahans failed to apply for an extension of the time deadlines in the zoning ordinance. Canton further argued that, because the Callahans failed to apply for an extension from the Board, any variance granted by the Board from the deadlines in the ordinance was error because, Canton argued, any hardship suffered by the Callahans was brought about by their own actions. Additionally, Canton argued that the zoning ordinance did not authorize the Board to issue a permit that would allow the Calla-hans to increase the height of pool house.
The Board responded to Canton’s motion for a summary judgment. and also moved the circuit court for a summary judgment in its favor. The Board argued that the delays in the permitting and construction of the pool house were due to the actions of Canton, not the inaction of the Callahans. The Board also argued that the Board had the authority to grant the Callahans a variance from the time requirements of the zoning ordinance. Finally, the Board argued that the increase in the height of the pool house was allowable under the zoning ordinance because, the Board said, it did not increase the nonconformity of the structure.
On August 25, 2010, the circuit court denied Canton’s motion for a summary judgment and entered a summary judgment in favor of the Board. Canton appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

“Our review of a summary judgment is de novo. ‘A motion for summary judgment is granted only when the evidence demonstrates that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P.’ Reichert v. City of Mobile, 776 So.2d 761, 764 (Ala.2000). *1287 We apply ‘the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact.’ Bussey v. John Deere Co., 5B1 So.2d 860, 862 (Ala.1988); System Dynamics Int’l, Inc. v. Boykin, 683 So.2d 419, 420 (Ala.1996). In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Borders v. City of Huntsville, 875 So.2d 1168, 1176-77 (Ala.2003).

Analysis

On appeal, Canton argues that the Board did not comply with the City’s zoning ordinance when the Board approved the Callahans’ building permit. The zoning ordinance at issue in this case states:
“1. CONTINUANCE OF NONCONFORMING STRUCTURES. Except as herein provided, any nonconforming structure may be occupied and operated and maintained in a state of good repair.
“2. ENLARGEMENT OR EXTENSION OF NONCONFORMING STRUCTURES. A nonconforming structure in which a nonconforming use is operated may be enlarged or extended on land owned on the effective date of this ordinance or on the effective date of any amendment hereto by which the structure became a nonconforming structure; provided, however, that the enlargement or extension shall conform to the height, building site area, building site coverage, and yard requirements of the district in which it is located and to the off-street parking requirements and the off-street loading requirements of this ordinance.
“3. RESTORATION OF DAMAGED NONCONFORMING STRUCTURES. A nonconforming structure damaged in any manner and from any cause whatsoever may be restored, provided restoration is begun within one-year and completed within two-years of the date of the damage. The Board of Zoning Adjustment may grant an extension of the one-year or two-year period upon application and showing of hardship.”
Section VII(B), City of Mobile Zoning Ordinance.
 Canton first argues that the circuit court erred in entering a summary judgment in favor of the Board because, Canton says, the Board’s decision to grant the Callahans a variance from the time requirements in the zoning ordinance was arbitrary. When a board of adjustment decides an appeal from a decision of a city permitting official, its powers are delineated in § 11-52-80, Ala.Code.1975, which provides, in pertinent part:
“(d) The board of adjustment shall have the following powers:
“(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this article or of any ordinance adopted pursuant thereto;
“(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance; and
“(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal *1288 enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.
“(e) In exercising the powers mentioned in subsection (d) of this section, such board may, in conformity with the provisions of this article, reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from and may make such order, requirement, decision, or determination as ought to be made and, to that end shall have all the powers of the officer from whom the appeal is taken. The concurring vote of four members of the board shall be necessary to reverse any order, requirement, decision, or determination of any such administrative official or to decide in favor of the applicant on any matter upon which it is required to pass under any such ordinance or to effect any variation in such ordinance.”
(Emphasis added.) Thus, by the plain language of § 11-52-80, the Board had the authority to approve a variance from the requirements of the zoning ordinance as part its review of the permitting official’s decision, provided that approving such a variance would alleviate unnecessary hardship, would fall within the spirit of the ordinance, and would result in substantial justice.
In spite of Canton’s vigorous protestations that allowing the Board to grant a variance from the requirements to obtain a permit within one year and to complete construction within two years was arbitrary, it is clear that the Board had evidence before it from which it could have determined that Canton’s actions in attempting to prevent the issuance of the building permit by filing a lawsuit against the Callahans in the circuit court, thereby forcing the City to hold the permitting process in abeyance, warranted a variance from the strict terms of the zoning ordinance requiring a party to meet certain time requirements for the permitting and restoration of a nonconforming structure or to file for an extension of those time requirements. Given the facts of this case, which clearly show Canton’s continual efforts to delay and block the issuance of the building permit, we see nothing arbitrary in the Board’s decision to grant the Calla-hans a variance from the time requirements in the zoning ordinance.
We also cannot agree with Canton that the failure to comply with the time requirements and extension procedure in the zoning ordinance was the fault of the Cal-lahans. As we noted above, the delay in the permitting process was the direct result of Canton’s lawsuit, not the result of any action taken or not taken by the Calla-hans. The Board also could have determined that, because the City had agreed with Canton to delay issuing the permit until after the resolution of its lawsuit, there was no need for the Callahans to file for an extension of time because that agreement implicitly served as a time extension.
Finally, Canton argues that the Board approved an impermissible expansion of the Callahans’ pool house. The Callahans increased the height of the pool house structure to comply with FEMA regulations, adding a second story to the structure. Canton argues that the zoning ordinance authorizes the pool house to be only restored, not expanded. In making its argument, Canton relies on the common definition of the word “restore.” However, one of the definitions quoted by Canton for the word “restore” is “to put or bring back into existence or use.” Merriam-Webster’s Collegiate Dictionary 1063 (11th ed.2003). In this case, in order to put or *1289 bring the pool house back into existence or use, its height must be increased to conform with current FEMA regulations. Because the pool house cannot be put or brought “back into existence or use” without complying with the FEMA regulations, it appears that the increase in the height of the pool house in order to comply with those regulations can be considered restoring the pool house.
Additionally, the pool house is a nonconforming structure because it does not meet the setback requirements for the zoning area in which it is located. The changes to the pool house will change only the height of the pool house, not its footprint. Canton provides no argument, and did not provide any evidence to the circuit court indicating, that the restored pool house would not comply with the height requirements for the zoning area in which it is located. Thus, the increase in the height of the pool house does not increase its nonconformity because it does not impact the footprint of the structure. See Ex parte City of Fairhope, 739 So.2d 35, 39 (Ala.1999).[3] Therefore, we find no merit in Cantoris argument on this issue.

Conclusion

Because we discern no error in the circuit court’s entry of a summary judgment in favor of the Board, we affirm the judgment of the circuit court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. When the pool house was built, the children of Kenneth Canton, the owner of Canton, owned both the Canton property and the Callahan property. Kenneth Canton directed the creation of the easement when his children sold what was to become the Callahan property to a third party. The Callahans purchased the Callahan property from that third party.

. Kenneth Canton, the owner of Canton, was not present at the hearing.

. We note that this result also conforms with the circuit court's judgment in Canton’s case against the Callahans, which permitted the Callahans "to update the [pool house] so as to comply with any new codes, provided that they do not materially alter the character of the easement” and provided that they do not enlarge the footprint of the pool house.