Laura Locke appeals from a summary judgment in favor of the City of Mobile. Locke, who owns a house in the Azalea and Cottage Hill area of Mobile, alleges that the City negligently maintained the drainage system in her neighborhood and that its negligent maintenance of the system resulted in the flooding of her property. Because we conclude that Locke failed to present substantial evidence showing that the City's negligent maintenance of the drainage system proximately caused the flooding of her property, we affirm.
 I. Factual and Procedural History
Locke resides at 3974 Hillcrest Lane West in Mobile. The house was built in 1968, and Locke purchased the property in 1995. The original portion of the house was built on piers; however, before Locke purchased the house, a 24-foot by 24-foot addition had been constructed on a concrete slab. Since Locke purchased the house, the addition has flooded on several occasions, and her yard has flooded at least twice.[1]
Locke testified that she first contacted the public works department of the City of Mobile in March 1997 when she noticed that "leaves and everything had come from the street up" into her yard. Locke was uncertain whether the drains were actually clogged or if the problem was caused by heavy rainfall. She has no knowledge whether the City sent a maintenance crew to clean the drain in response to her telephone call because she left town after she made the telephone call. When she returned, the leaves were gone; however, she attributed the removal of the leaves to her yardman. The record does not include any other specific telephone calls to the City by Locke or her neighbors requesting that the City maintain the drains. In referring generally to other calls she made to the City, Locke stated that "[the City] [does] come out when I call, but it's not on a regular basis." Locke also testified that she did not know how often the City maintained the drains or if the City had a scheduled maintenance plan.
On April 1, 1999, Locke sued the City of Mobile, alleging negligent design, construction, and maintenance of the drainage system. Locke claims that the flooding *Page 448 
was a direct and proximate consequence of the City's negligence, which she said resulted in damage to her home and personal belongings. Locke also seeks compensation for her physical pain, severe inconvenience, and mental anguish.
The City filed a motion for a summary judgment, claiming that Locke failed to present (1) substantial evidence indicating that the City had negligently designed, constructed, or maintained the drainage system and (2) substantial evidence indicating that any alleged negligence on the part of the City had proximately caused the flooding of her property. With its summary-judgment motion, the City submitted excerpts from the deposition testimony of Locke and her engineering expert, Kenneth Underwood, in order to show that Locke was unable to link the flooding of her property to the City's alleged negligent maintenance of the drains. Locke filed a response in opposition to the City's summary-judgment motion; that response included her own deposition testimony as well as that of Underwood and Robert Vogtner, an engineer for the City of Mobile. Based upon the parties' briefs and the materials submitted to it, the trial court held that Locke had failed to present substantial evidence from which a jury could reasonably infer that "the City of Mobile's design, construction, or maintenance of the drainage system in [Locke's] neighborhood proximately caused the flooding of [her] property" and entered a summary judgment in favor of the City.
 II. Standard of Review
"A motion for summary judgment is granted only when the evidence demonstrates that `there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Ala.R.Civ.P." Reichert v. City of Mobile, 776 So.2d 761, 764
(Ala. 2000). To defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence creating a genuine issue of material fact. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). Our review of a summary judgment is de novo, and we review a summary judgment in the light most favorable to the nonmoving party, applying "the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988); System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419, 420
(Ala. 1996).
 III. Negligent Maintenance
In order to prevail on its motion for a summary judgment, the City was not required to prove that the flooding was not a result of its negligent maintenance. See Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala. 1999).
 "`If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56[, Ala.R.Civ.P.,] burden of production either by submitting affirmative evidence that negates an essential element in the nonmovant's claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim.'"
Id. (quoting Justice Houston's special concurrence in Berner v.Caldwell, 543 So.2d 686, 691 (Ala. 1989), overruling Berner and adopting Justice Houston's special concurrence in Berner as the accurate statement of the law.) (emphasis omitted). The City, *Page 449 
as previously noted, submitted excerpts from the depositions of Locke and her engineering expert that sufficiently discharged its burden by demonstrating the insufficiency of Locke's evidence on the essential element of her claim — negligent maintenance as the proximate cause of the flooding. The burden then shifted to Locke to present substantial evidence indicating that the flooding was proximately caused by the City's negligent maintenance. Reichert, 776 So.2d at 765-66. The issue on appeal is whether Locke presented substantial evidence showing that the City's alleged negligent failure to maintain the drainage system in her neighborhood proximately caused the flooding of her property.[2] In her appeal to this Court, Locke does not argue the theories of negligent design and construction she advanced in her complaint.
Locke argues that she presented substantial evidence showing that the flooding of her home was caused by the City's negligent failure to maintain the drainage system in her neighborhood. The City argues that Locke provided no evidence relating any specific failure by the City to maintain the drainage system to a specific flooding event. The City also claims that the testimony of Locke's engineering expert was inadmissible, because, it says, he based his opinion upon inadmissible information provided to him by Locke's counsel. Because we find that Locke failed to present substantial evidence linking the flooding of her property to the negligence of the City, regardless of the alleged inadmissible testimony of Locke's expert, we need not discuss whether that testimony was admissible.
To prove proximate cause, Locke presented her own testimony and that of Underwood.[3] According to Underwood, the flooding of Locke's property was not a result of excessive rainfall or a defect in the design of the drainage system. After eliminating those possibilities, Underwood attributed the flooding to a maintenance problem. Underwood explained his process of elimination as follows:
 "My understanding is that there have been problems with blockage through time. I have reviewed no City records. This is what I've been told. And knowing that rainfall — the rainfall data — does not indicate that the 10-year rainfall event has been equaled or exceeded or not even close to that, the chance of excessive rainfall causing the problem, in my opinion, has been eliminated.
 "The design aspect of it, I don't have the design computations to review. This was done by an engineering firm; Norden Engineering Company, consulting engineers. It was approved by the County. The County accepted this. [It] signed off on it, the County engineer did in 1968, so I am assuming that the design was correct.
 "The maintenance aspect of it is the only mechanism whereby I can see that failure can occur. Rainfall was not the *Page 450 
problem, and in my opinion, the design is not the problem. It is the maintenance or the lack thereof where the problem comes from, and it's a system, if it's blocked, it can't flow the water. I don't know of any other factor to consider in this matter."
The trial court based its ruling, in part, on its finding that Underwood was unaware of any evidence of a maintenance problem and that Underwood did not know of any particular maintenance problem that led to a specific flooding event on Locke's property. Based upon a review of the record, we agree that Underwood was unaware of any specific maintenance problem. Any expert who must resort to the process of elimination for his or her conclusion by necessity has no specific knowledge.
Although we affirm the trial court's summary judgment in favor of the City, we do not wish to be understood as concluding that Underwood's methodology — using a process of elimination — cannot create circumstantial evidence on which an expert can base his or her opinion.Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 651-52 (10th Cir. 1991) (expert should have been permitted to testify, having expressed his opinion based on the implicit elimination of any other possible causes);Gichner v. Antonio Troiano Tile Marble Co., 410 F.2d 238, 247
(D.C. Cir. 1969) (expert who eliminated all potential causes of fire, except one, may in some circumstances provide the basis of a court's final decision; "Bearing on the credibility of such testimony is the thoroughness with which the expert identifies all the potential causes and the soundness of his reasoning in eliminating each one."); Texas Pacific Ry. v. Watson, 190 U.S. 287, 289-90 (1903) ("Evidence of the surrounding circumstances and conditions which by a process of exclusion would have tended to establish that the burning of the cotton could not have been caused other than by the locomotive in question would, we think, have been clearly relevant."). The validity of an expert's opinion based on a process of elimination thus depends on the trial court's satisfaction with the expert's credentials[4] and the bases for his or her ruling out other causes.
Underwood concluded by a process of elimination that the flooding was caused by faulty maintenance of the drainage system. Underwood's process of elimination would logically support an inference that the flooding resulted from a blockage. A blockage, however, does not necessarily mean negligent maintenance; a blockage could occur as well from the sudden and unforeseeable deposit of some foreign object or material as from the gradual accumulation of foreseeable debris that prudent maintenance would prevent. If the flooding resulted from some sudden and unforeseeable deposit, the issue of the City's negligence would depend on, among other factors, whether or not the City had notice of that particular deposit. Reading the trial court's order as finding a lack of evidence indicatingnegligent maintenance, which was the gravamen of Locke's claim, we must, as explained below, affirm.
Underwood's process failed to eliminate all possible causes for the flooding other than the City's negligence in maintaining the drainage system. Underwood observed the property on February 22, 2001, approximately four years after the date of the first flooding and almost two years after the filing of the complaint. Underwood testified that "[i]f what [he] saw *Page 451 
today is any indication of the situation in the past, then the storm drain to the west of [Locke] is what caused the problem with [the water] bypass." However, Underwood did not review any City work-crew reports or provide any evidence linking the flooding to the City's negligent maintenance. Underwood's personal observation merely showed that the drains were blocked on a particular day but presented no evidence of the City's latest inspection of the drains and/or the City's notice of the condition of the drains on that particular day. Underwood suggested that the City needed to conduct routine inspections, "especially in the areas where drainage problems exist or where flooding problems are persistent." However, the record before us fails to outline the City's maintenance plan, and we cannot assume that the City does not regularly inspect the drains as Underwood recommended.
Locke's own testimony also failed to provide the necessary evidence attributing the maintenance problem to the negligence of the City. To rebut the City's allegation that she failed to present substantial evidence of a maintenance problem, Locke made the following assertion:
 "To the contrary, Ms. Locke has testified that there was no regular program of maintenance along Hillcrest Lane and that the drains at her home and at Azalea Road to the east were blocked. She further testified that she would call the City, and on occasion they would react after a flooding problem to clean the drain[s]. Therefore, there is testimony in the record that there was a maintenance problem in the area of Hillcrest Lane, contrary to the Appellee, City of Mobile's assertion in [its] brief."
(Locke's reply brief, at pp. 7-8; emphasis in original.) However, after reviewing the record, we find that Locke was unaware of the City's maintenance program. She testified that maintenance was not performed on a regular basis; yet she later stated that she did not know how often the City maintained the drains or if the City had a maintenance schedule.
In Kmart Corp. v. Bassett, 769 So.2d 282 (Ala. 2000), the plaintiff, in order to defeat Kmart's summary-judgment motion, attempted to present substantial evidence showing that Kmart's negligent failure to maintain its automatic doors with reasonable care resulted in the plaintiff's fall and her subsequent injuries. The plaintiff presented the following evidence, which, she argued, constituted substantial evidence creating a genuine issue of material fact as to her negligence claim:
 "[The plaintiff] argues that she presented evidence indicating that the company that installed the doors sold maintenance contracts as part of its business; that Kmart had no maintenance contract for the doors; that Kmart had a policy of waiting until the doors needed repair or maintenance before calling someone to work on them; that the Kmart store manager . . . knew that the doors occasionally malfunctioned by failing to work at all; and that without preventive maintenance, automatic doors will malfunction or stop working properly."
769 So.2d at 285. The plaintiff's fall occurred less than seven months after the most recent inspection of the automatic doors. Id. The plaintiff's own expert testified that inspecting the doors every six months constituted reasonable maintenance; "[h]owever, [the plaintiff's expert] did not testify that a failure to inspect the doors for a period exceeding six months would have been unreasonable." 769 So.2d_at 285. We affirmed the summary judgement in favor of Kmart, yet noted that "[t]his case would be quite different if [the plaintiff's expert] had been asked about, and had described, a point beyond *Page 452 
which Kmart's failure to inspect the doors would have been unreasonable maintenance and if that period had elapsed before [the plaintiff's] accident occurred. . . ." 769 So.2d at 285 n. 3.
The plaintiff's injuries in Kmart were allegedly caused by a malfunctioning of the automatic doors. However, the plaintiff failed to provide evidence indicating that the malfunction was caused by Kmart's failure to use reasonable care to maintain the doors. Here, Locke presented evidence tending to show that the flooding was a result of a maintenance problem. However, she failed to link this cause to any alleged negligent maintenance by the City. As in Kmart, the case before us would be quite different if Underwood or Locke had provided evidence of a point beyond which the City's maintenance of the drains would be considered negligent.
Locke relies on several cases that recognize a City's continuing duty to maintain its drainage system. However, in each case cited by Locke, the plaintiffs presented substantial evidence of negligence so as to meet the applicable burden of proof. For example, Locke cites Lee v. City ofAnniston, 722 So.2d 755 (Ala. 1998), a case in which this Court reversed a summary judgment for the City of Anniston. The plaintiff in Lee sued the City alleging that it negligently designed or constructed a storm-sewer system causing the plaintiff's son to drown in an inlet pit during a storm. 722 So.2d at 757. The plaintiff also alleged that the City knew or should have known that safety devices were required to warn individuals of the dangers of the inlet pit. Id. The plaintiff's expert testified that the pipe in the inlet pit was negligently installed and that that negligent installation created a foreseeable danger during major storms. Id. at 759. Further testimony established that the City was on inquiry notice of the dangers of the unmarked inlet pits. A newspaper reporter had previously posed a young lady in the channel to show the depth of the water; she lost her footing and was pulled through a pipe in the inlet pit. Id. at 760.
Unlike the evidence in Lee, Underwood's testimony failed to eliminate causes other than the negligent maintenance of the City for the drainage problem. Locke's own testimony establishes that she was unaware of the City's maintenance plan or schedule. Furthermore, Locke presented no evidence to show that the City was placed on notice of the drainage problems and that it subsequently failed to respond. See Reichert,776 So.2d at 766 (reversing a summary judgment, in part, when the expert testified that the City's failure to maintain storm-water culverts contributed to flooding and that the City's permits for development would increase the discharge of surface water); see also City of Mobile v.Jackson, 474 So.2d 644, 646 (Ala. 1985) (affirming a judgment on a jury verdict in favor of the plaintiff when evidence showed that the plaintiff informed the City of drainage problems and the City failed to act upon the recommendations of the city engineer to remedy the flooding).
In her reply brief to this Court, Locke summarized her evidence, stating that "[w]hile [she] could not, as it is submitted any reasonable person could not, assert the exact condition of the drains on each exact flood date, a general pattern of lack of maintenance existed through and including the flood dates at issue." (Locke's reply brief, at p. 8.) Locke's only evidence supporting her allegation of a general lack of maintenance consists of her testimony (1) that the clogged drains have been a persistent, constant problem, (2) that the only times she witnessed the City actually cleaning the drains were in response to her telephone calls to the City, and (3) that the City would clean the drains after her calls, but not on a regular basis, although she also said that she did not know whether *Page 453 
the City had a maintenance schedule for the drains. For all that appears, the obstruction causing the drains not to function occurred at the time of or immediately before the rainfall that led to the flooding, a circumstance not consistent with negligent maintenance.
Locke failed to present substantial evidence indicating that the maintenance problems existed for such a length of time that constructive notice of the drainage buildup could be imputed to the City and/or that the City had actual notice of the problem and failed to respond. CompareLee, supra, and Carson v. City of Prichard, 709 So.2d 1199, 1203 (Ala. 1998) (affirming a judgment on a jury verdict in favor of the plaintiff when evidence showed that the Board knew of the sewage overflow problem, yet failed to act upon the engineer's recommendations to remedy the problem), with Speer v. Pin Palace Bowling Alley, 599 So.2d 1140 (Ala. 1992) (affirming a summary judgment in favor of bowling alley when the plaintiff failed to present evidence indicating that the bowling alley had actual or constructive notice of the substance on the floor that allegedly caused the plaintiff to slip and fall). Because Locke failed to meet her burden of proof, the City is entitled to a summary judgment as a matter of law.
 IV. Conclusion
Because we find that Locke failed to provide substantial evidence of negligent maintenance on the part of the City, we affirm the summary judgment in favor of the City.
AFFIRMED.
MOORE, C.J., and HOUSTON, JOHNSTONE, and WOODALL, JJ., concur.
[1] In her initial complaint, Locke alleges that her property flooded in January 1998, March 1998, and March 1999. Locke amended her complaint to include the additional dates of June 1999 and November 1999. Locke's deposition testimony also includes the dates of May 1997 and July 1997. The two dates on which only Locke's yard flooded are March 1999 and June 1999.
[2] The duty of the City to maintain the drainage system is not an issue in the present case. "Pursuant to Ala. Code 1975, §§ 11-50-50 to -56, `municipalities are authorized to construct and maintain drainage systems.'" Lee v. City of Anniston, 722 So.2d 755, 757 (Ala. 1998) (quoting City of Mobile v. Jackson, 474 So.2d 644, 649 (Ala. 1985)). A municipality is not required to exercise this authority; however, once it does, a duty of care arises and a municipality becomes liable for its own negligence. Id. Locke presented the testimony of Vogtner, an engineer for the City of Mobile, who stated that the streets surrounding Locke's property were city streets, which the City undertook a duty to maintain.
[3] Kenneth Underwood is a retired engineer; before he retired he worked for the United States Corps of Engineers. He has over 34 years of experience as a resident engineer.
[4] See Advisory Committee's Notes to Ala. R. Evid. 702 ("Much discretion remains vested in the trial judge to determine whether a proffered witness qualifies as an expert.").