Dianna Byrd, a resident of the City of Citronelle ("the City"), appeals from a summary judgment entered in the City's favor. We affirm.
 Facts and Procedural History
Byrd owns and resides at a house located at 19000 Prine Road, within the city limits of the City. Immediately south of Prine Road, within the City's right-of-way, a drainage ditch runs across the northern-most portion of Byrd's property. Immediately east of Byrd's property lies the property of Kenneth and Tammy Bussen. The ditch also runs across their property. The ditch is designed to cause water to flow in a northeasterly direction and receives water not only from Byrd's property and the Bussens' property, but also from areas north and west of Prine Road.
Byrd asserts the following course of events: In 1987, she discovered that excess rainwater was beginning to puddle at a point of low elevation at the northeast corner of her property.[1] The "puddle" was apparently of such size and character and remained standing on the property for such a period of time that it began to attract mosquitoes and other insects and to emit a foul odor. Although Byrd concedes that this puddle did not constitute a "flood" that had encroached onto her property, she did consider it a nuisance, and she voiced a complaint to the city council not long after she noticed the insects and odor, blaming the "puddle" on debris that had collected in the ditch and requesting that the ditch be cleaned. There is no indication in the record whether the City took any remedial action in response to Byrd's complaint or whether the problems abated or continued in the aftermath of her complaint.
By 1997, the ditch had begun to "back up" frequently, so that after an excessive rain Byrd's property would flood. Each time the water receded, it carried with it some topsoil from her property, thus slowly causing her property to erode. That year, Byrd again complained to the city council, which assured Byrd that it would take action to correct the problem. According to Byrd, however, it did not do so.
On March 8, 2001, apparently after yet another entreaty from Byrd, the City sought the services of an engineer to correct the flooding problem on Byrd's property. On March 20, 2001, RDA Service Company, Inc. ("RDA"), proposed to the City that it would correct the drainage problems on Byrd's property by "fill[ing] the existing ditch to grade and allow[ing] water to run off as expected with no standing water in the ditch after rainfall." In April 2001, the City approved RDA's proposal, and RDA began and completed the work. As the City explains the repairs in its brief, "RDA was simply putting the dirt ditch back to its original grade so that it would drain more efficiently. As with any dirt ditch, over the years, it developed low areas and high areas that would allow for standing water." (City's brief at 12.) Byrd likewise asserted in her affidavit filed in opposition to the City's motion for a summary judgment that the work done by RDA "only included the dumping of red clay into the bottom of the ditch, so that any flooding in December, 2002 was red water." *Page 518 
On December 5, 10, 19, 23, and 31, 2002, floodwaters entered Byrd's property. On January 8, 2003, pursuant to Ala. Code 1975, § 11-47-192, Byrd filed with the City's clerk a sworn "statement of claim" recounting the five floods on her property that had occurred during the previous month and claiming damages for those incidents. On January 16, 2003, she sued the City and RDA, alleging in her complaint that the City was liable for negligent design, construction, and/or maintenance of the ditch; gross negligence; continuing trespass; and continuing nuisance; and that RDA was liable for negligent design, construction, or maintenance of the ditch. Byrd specifically alleged that the negligence of the City "in failing to maintain the drainage system . . . has consisted of . . . the allowance by [the City] of debris to be placed in and to accumulate in the [system's] culverts and/or catch basins so that waters resulting from rainfall have been unable and continue to be unable to flow through and into the catch basins and culverts and into underground drainage systems so that the waters are diverted, directed, and channeled onto the property of [Byrd]." Byrd amended her complaint four times to allege the occurrence of nine floods on her property after the filing of her original complaint. None of the floods have ever encroached onto her yard as far as her house.
On December 29, 2003, RDA filed a motion for a summary judgment, which the trial court granted on February 27, 2004. In that order the court found that the City had not hired RDA "to redesign" the ditch, that RDA had not done so, and that "there is simply no evidence" indicating that Byrd's flooding problems "were exacerbated as a result of RDA's work." Byrd has not appealed that summary-judgment order, and it constitutes a part of the "law of the case." On April 4, 2005, the City filed a motion for a summary judgment, which the trial court granted on June 21 by an order reading:
 "[The City] seeks a summary judgment in its favor requiring the dismissal of [Byrd's] claims. The record does not reveal that work performed in April, 2001 made the flooding problem worse. Therefore, it is apparent the flooding of Plaintiffs property results from defects in the initial design or construction of the subject ditch. Negligent design/construction claims are barred by the two year statute of limitations. The record does not indicate that negligent maintenance causes or contributes to the flooding, except by the conclusory affidavit of Kenny Underwood,[2] which provides no explanation of what specific facts he used to form his opinion. The negligent maintenance claims are not barred by the statute of limitations, but are not supported by sufficient evidence."
Byrd then filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate this summary judgment, which the trial court denied. Byrd appeals only with respect to her claims against the City alleging negligent design, construction, and/or maintenance of the ditch.
 Standard of Review "This Court reviews a summary judgment de novo. Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala. 2004). We seek to determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and has demonstrated that the movant is entitled to a judgment as a matter of law. Turner, supra. In reviewing a summary judgment, this Court reviews the evidence in *Page 519 
the light most favorable to the nonmovant. Turner, supra. Once the movant makes a prima facie showing that he is entitled to a summary judgment, the burden shifts to the nonmovant to produce `substantial evidence' creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Fla., 547 So.2d 870, 871
(Ala. 1989)."
Muller v. Seeds, 919 So.2d 1174, 1176-77 (Ala. 2005).
 Analysis I. Negligent-Design and Negligent-ConstructionClaims
Like Byrd, the plaintiffs in Reichert v. City ofMobile, 776 So.2d 761 (Ala. 2000), alleged in their action against the City of Mobile negligent design, negligent construction, and negligent maintenance of a drainage ditch. With respect to the plaintiffs' allegations of negligent design and negligent construction, the Court applied the well-settled law that negligent design or construction of a drainage ditch is considered to be a permanent condition that is not abatable.776 So.2d at 764-65 (quoting Harris v. Town of TarrantCity, 221 Ala. 558, 560, 130 So. 83, 84-85 (1930)). As this Court stated in Harris, "for an injury by a permanent and unabatable condition the damages are estimated on the hypothesis of an indefinite continuance of the nuisance. . . . In such event, one may not recover in successive suits, but his damages are awarded in solido in one action." 221 Ala. at 560,130 So. at 84. Thus, in Reichert, this Court held that because the plaintiffs' negligent-construction and negligent-design claims were brought more than two years after the first postconstruction flood, the statutory limitations period had run as to those claims.
In the instant action, the trial court's order granting the City's summary-judgment motion adopted the reasoning inReichert in ruling that Byrd's negligent-design and negligent-construction claims were barred by the statute of limitations. Byrd argues that the court erred in reaching this conclusion, contending:
 "Based on the [City's] narrative summary of undisputed facts, the drainage problems were to be corrected by RDA in April, 2001. [Byrd's] first flood after that work was December, 2002 and the suit was filed in January, 2003, all within two years of the first flood subsequent to the design or construction occurring April, 2001 and, accordingly, within the appropriate statute of limitations set forth by Reichert."
(Byrd's brief at 21.) Byrd's argument would be wholly correct if RDA's work in April 2001 constituted "design or construction." Byrd considers this characterization of RDA's work as fair "[b]ased on the [City's] narrative summary of undisputed facts." Yet a review of that feature of the City's summary-judgment motion reveals that the City did not so characterize RDA's work. Rather, the City's narrative summary of material facts in support of its motion states only the following with respect to RDA's work:
 "6. In March of 2001, RDA submitted a proposal to the City of Citronelle regarding drainage problems with the Prine Road drainage ditch. (Proposal of [RDA], dated March 20, 2001-Exhibit A). *Page 520 
 "7. The [City] accepted RDA's proposal on April 12, 2001 and authorized it to perform work on the Prine Road drainage ditch. ([Mayor Rannel] Presnell depo., p. 15-16)."
The portion of Mayor Rannel Presnell's deposition cited in the quoted portion of the City's narrative summary of undisputed facts and properly submitted as an exhibit to its summary-judgment motion does not in any way suggest that RDA's work constituted "construction" or "design."
RDA's proposal, also cited by the City in the above-quoted portion of its narrative summary, contains one sentence that, one could argue, suggests that perhaps its work on the drainage ditch in fact constituted "construction." The proposal sets forth six "bullet points" detailing the work it proposed to do. The fifth "bullet point" states:
 "[RDA] will re-adjust all existing driveway piping to the correct elevations.
 "The [City] shall furnish HDPE Pipe for any drives needing replacement[;] [t]here is one drive with existing concrete pipe that will need to be replaced.
 "The [City] will seed and mulch all disturbed areas caused by construction efforts."
As noted, Byrd asserted in her affidavit that all RDA did was to dump red clay in the bottom of the ditch. She similarly characterizes that work in her brief, asserting that it "result[ed] in red clay being brought to fill the bottom of the ditch." (Byrd's brief at 11.) Importantly, concerning RDA's proposal regarding replacement of pipe "for any drives needing replacement," Byrd states in her brief that "[i]n fact, the concrete culverts were not replaced" and asserts that the flooding problem is attributable in part to "the lack of removal of the restrictive driveway pipes." (Byrd's brief at 11-12, 17.) Even viewing, as we must, the facts in the light most favorable to Byrd, Turner v. Westhampton Court, L.L.C.,903 So.2d 82, 87 (Ala. 2004), the only reasonable inferences that can be drawn from this body of evidence is that no new "design or construction" took place in connection with RDA's work in 2001. Rather, the City has made an unrebutted showing that the design and construction of the ditch took place well before 2001, probably well before 1987. The first postconstruction flood evidenced in the record occurred no later than 1997, which means that the statute of limitations ran no later than 1999, nearly four years before Byrd filed her action. Therefore, we conclude that the statute of limitations bars Byrd's negligent-design and negligent-construction claims against the City and that the trial court's summary judgment for the City in that regard is due to be affirmed.
 II. Negligent-Maintenance Claim
Byrd also challenges the summary judgment for the City on her claim alleging negligent maintenance of the ditch. As noted, the trial court ruled that Byrd failed to present substantial evidence indicating that the City had negligently maintained the ditch.
In her brief on appeal, Byrd points to four items of evidence that she argues support this claim. First, she cites her own affidavit, but it merely asserts that her property flooded on various occasions, without attempting to assign any cause or describe any omitted, or negligently performed, maintenance of the ditch by the City.
Byrd also cites RDA's proposal; it does indicate that RDA was to perform work on the ditch that could be fairly characterized as constituting "maintenance." Thus, we conclude that RDA's proposal constitutes *Page 521 
substantial evidence in support of the proposition that the City assumed a duty to adequately maintain the ditch. We find nothing in that document, however, indicating that the City breached that duty.
The third piece of evidence cited by Byrd as constituting substantial evidence indicating that the City breached its duty to maintain the ditch is a two-page excerpt from the deposition testimony given by Mayor Presnell in a separate case, brought by the Bussens against the City; Byrd attempted belatedly to submit the excerpt to the trial court in connection with a letter brief tendered after the City's summary-judgment motion had been argued and submitted. The trial court was certainly entitled to disregard that submission as untimely under Rule 56(c)(2), Ala. R. Civ. P., and nothing in the record indicates that it considered it. Even assuming that the trial court chose to consider it, however, this deposition excerpt fails to evidence any breach of duty by the City. Rather, Mayor Presnell's excerpted testimony established only that the ditch was cleaned and/or maintained as necessary.
The primary evidence upon which Byrd relies with respect to her negligent-maintenance claim is the affidavit of Kenneth Underwood, a professional engineer retained by Byrd as an expert witness. Underwood names three specific circumstances that he alleges evidence a breach of the City's duty to adequately maintain the ditch: (1) obstructions in the ditch, (2) obstruction of the driveway pipes, and (3) improper sloping of the ditch. Underwood does not, however, explain these deficiencies in any detail whatsoever, nor does he suggest the proper remedial action. He simply asserts in a conclusionary fashion that for there to be proper drainage, the ditch "must be free and clear of obstructions [and] must be maintained on a regular basis," and he asserts that there is "lack of maintenance of the ditch." Underwood does not identify anything the City has done or failed to do that would constitute lack of maintenance. He does not say that he ever observed any "obstructions" in the ditch, and he does not explain the nature or location of any obstructions, other than to say that water backed up "due to the obstructions in the ditch . . . and obstructions of the driveway pipes along the ditch." As noted, the only averments in Byrd's complaint relating to something in the nature of an obstruction reference the accumulation of debris in culverts and catch basins.
In Locke v. City of Mobile, 851 So.2d 446 (Ala. 2002), we explained as follows with respect to a claim alleging negligent maintenance of a drainage system by the City of Mobile:
 "In order to prevail on its motion for a summary judgment, the City was not required to prove that the flooding was not a result of its negligent maintenance. See Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala. 1999).
"`"If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56[, Ala. R. Civ. P.,] burden of production either by submitting affirmative evidence that negates an essential element in the nonmovant's claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim."'
 "Id. (quoting Justice Houston's special concurrence in Berner v. Caldwell, 543 So.2d 686, 691 (Ala. 1989), overruling Berner and adopting Justice Houston's special concurrence in Berner as the accurate statement of the law) (emphasis omitted). The City, as previously noted, submitted excerpts from the depositions *Page 522 
of Locke and her engineering expert that sufficiently discharged its burden by demonstrating the insufficiency of Locke's evidence on the essential element of her claim — negligent maintenance as the proximate cause of the flooding. The burden then shifted to Locke to present substantial evidence indicating that the flooding was proximately caused by the City's negligent maintenance. Reichert [v. City of Mobile], 776 So.2d [761,] 765-66 [(Ala. 2000)]. The issue on appeal is whether Locke presented substantial evidence showing that the City's alleged negligent failure to maintain the drainage system in her neighborhood proximately caused the flooding of her property."
851 So.2d at 448-19. In Locke (in which, we note, Underwood was also the proffered expert engineer), this Court explained that an expert's personal observation of a deficient condition, by itself, is insufficient to oblige this Court to reverse a summary judgment for a city on a negligent-maintenance claim. Rather, we expressed a desire to see evidence from that expert indicating that the city was derelict in responding to a condition of which it had been made aware. 851 So.2d at 451-52. For instance, we stated that an obstruction in a ditch "does not necessarily mean negligent maintenance"; rather, the obstruction could simply indicate "the sudden and unforeseeable deposit of some foreign object or material." 851 So.2d at 450.
In this case, none of the conditions discussed by Underwood indicates negligent maintenance, because none is described with such specificity that we can infer negligence on the part of the City. Although Underwood's affidavit does emphasize that he has inspected Byrd's property on more than one occasion and that he has "reviewed photographs of flooding" of her property, he does not offer even approximate dates on which those inspections took place. He does not say what he observed on any occasion. Ultimately, Underwood's affidavit merely stands for the proposition that, for reasons that remain unexplained, he believes that there is inadequate drainage of the ditch on Byrd's property "[d]ue to the lack of maintenance of the ditch and the lack of proper slope of the ditch along with the restrictive driveway culverts installed on the City of Citronelle right-of-way." The latter two conditions are clearly matters of design or construction. All of this evidence indicates the existence of conditions having the potential to cause flooding, but, without more, it is not substantial evidence indicating any negligence by the City in maintaining the ditch. The trial court noted in its summary-judgment order in favor of the City that "the conclusory affidavit of Kenny Underwood, which provides no explanation of what specific facts he used to form his opinion," constitutes Byrd's only evidence of negligent maintenance, and it does not constitute substantial evidence in that regard. Therefore, the trial court was correct in entering a summary judgment for the City on Byrd's negligent-maintenance claim.
 Conclusion
The summary judgment for the City on Byrd's claims alleging negligent design, construction, and/or maintenance of the drainage ditch is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, STUART, and BOLIN, JJ., concur.
[1] A reasonable inference from Byrd's deposition testimony is that this point of low elevation was a part of the ditch.
[2] Kenneth Underwood is a professional engineer retained by Byrd as an expert witness. *Page 523