BRYAN, Justice.
Sandra Chavers sued the City of Mobile (“the City”) seeking damages based on claims of negligent maintenance, continuing trespass, continuing nuisance, and inverse condemnation, all related to that part of the City’s storm-water-drainage system that abuts her property. After the Mobile Circuit Court entered a summary judgment in favor of the City, Chavers appealed. We affirm in part and reverse in part, and we remand the case with directions.

Facts and Procedural History

Chavers’s home is located on Seabreeze Road in Mobile. Seabreeze Road is the southern border of Chavers’s property, and there is an open concrete-lined drainage ditch along the northern border of Chavers’s property. A storm-water-drainage system conveys storm-water runoff in an underground concrete pipe that runs in an easterly direction along the southern border of Chavers’s property (along Sea-breeze Road) to a junction box near the southeast corner of Chavers’s property. *496 The storm-water runoff is then conveyed to the north in a concrete pipe along an easement owned by the City to the open concrete-lined drainage ditch that runs along the northern border of Chavers’s property. Chavers’s property naturally slopes north from Seabreeze Road down to the concrete ditch.
In a complaint filed in January 2007, Chavers contended that as a result of the City’s negligence the storm-water-drainage system had failed, causing damage to her property. As noted above, her request for damages was based on claims against the City alleging negligent maintenance, continuing nuisance, continuing trespass, and inverse condemnation.
The City filed a motion in the circuit court seeking to establish the proper measurement for damages based on the allegations in Chavers’s complaint. The City argued that Chavers could not pursue an inverse-condemnation claim, which would allow Chavers to recover damages for a partial taking that amounted to the difference between the fair-market value of the entire property before the taking and fair-market value of the property remaining after the taking,[1] because, it alleged, she did not suffer a permanent loss of value to the property allegedly taken. The City contended that the damage alleged by Chavers was abatable, not permanent, and, thus, that the measure of damages applicable to an abatable condition should apply. Although Chavers objected, the circuit court, which treated the City’s motion as one for a summary judgment on Chavers’s inverse-condemnation claim, granted the City’s motion and held that “on the issue of the correct measure of damages, [Chavers] is not entitled to any damages based on the alleged diminution in the value of [her] property; rather, she is entitled to the cost to put the land in the condition it was [in] at the time immediately preceding the injury.” The circuit court purported to certify the “summary judgment as suitable for interlocutory appeal” pursuant to Rule 5, Ala. R.App. P., and Chavers petitioned for permission to appeal, which this Court denied.
The City subsequently moved for a summary judgment on Chavers’s remaining claims, arguing that, because, it said, her negligent-maintenance claim[2] must fail, her remaining trespass and nuisance claims must also fail. See Royal Auto., Inc. v. City of Vestavia Hills, 995 So.2d 154, 156 (Ala.2008) (noting that, where the plaintiffs negligence claims against Vesta-via and Hoover failed, the plaintiffs nuisance and trespass claims also necessarily *497 failed); and Hilliard v. City of Huntsville, 585 So.2d 889, 893 (Ala.1991) (“[T]he viability of a negligence action against a municipality ... determines the success or failure of a nuisance action based upon the same facts.” (citing § 11 — 47—190, Ala.Code 1975)). The City argued (1) that Chavers failed to provide substantial evidence that she had suffered any damage during the time frame permitted by § 11^7-28, Ala. Code 1975;[3] (2) that Chavers had failed to provide substantial evidence of a negligence claim under § 11 — 47—190; and (3) that Chavers could not present substantial evidence that her damage was proximately caused by the actions of the City. In support of its motion, the City attached excerpts from the depositions of Chavers and Kenneth Underwood, Chavers’s expert, as well as a geotechnical study of Chavers’s property and Chavers’s notice of claim filed with the City pursuant to § 11-47-23. Chavers responded and attached, among other things, a report written by Underwood and the deposition testimony of Kenneth Hires and James Foster, employees of the City.
Chavers testified that she began noticing “sinkholes” along the back of her property, near the open concrete-lined drainage ditch, in the mid 1990s. According to Chavers, she talked to the City about the problem, and the City sent people to inspect her property, but no one from the City took any action. On March 21, 2006, Chavers filed a sworn statement of claim with the City, pursuant to § 11-47-23. In her sworn statement, Chavers alleged that she suffered damage on a daily and ongoing basis as a result of the City’s failure to maintain its storm-water-drainage system.
Chavers’s theory of recovery is based on a report completed by Underwood after he visited her property in March 2008. In the report, Underwood stated that the open concrete-lined ditch along the northern border of Chavers’s property had “failed” because the concrete was severely cracked with bare soil exposed in many locations. He also stated that the underground concrete pipe and junction boxes along Seabreeze Road had also “failed” in many locations. According to Underwood, the failure of the drainage system along Seabreeze Road allowed for the exfiltration of storm water into the soil, meaning that the storm water flowed out of the underground pipe and junction box and into the soil. The exfiltrated storm water then naturally flowed down-gradient to the north until it was intercepted by the failed open concrete-lined drainage ditch along the northern border of Chavers’s property. Because the open concrete-lined ditch had failed, it allowed for the infiltration of groundwater into the ditch and allowed for fine-grained soils to be transported into the ditch with the groundwater. Underwood stated that this loss of soil had resulted in numerous large sinkholes on the northern border of Chavers’s property, immediately adjacent to the open concrete-lined ditch, with smaller sinkholes at other locations on Chavers’s property.
Kenneth Hires, an employee of the City’s engineering department, testified that he went to Chavers’s residence and placed dye on her property.[4] The dye *498 eventually made its way “under land” into the open concrete-lined ditch on the northern border of Chavers’s property. Hires testified that when he visited Chavers’s property, he noted that the open concrete-lined ditch was old; that there was aggregate showing on the surface that should have been covered by concrete; that there were cracks at the joints; and that there were “openings” in some places. He also testified that there were “voids” between the edge of the open concrete-lined ditch and the back edge of Chavers’s property. He testified that those voids were caused by surface water from Chavers’s property and her neighbor’s property that had flowed “down contour” until it found the weakest point in which to wash into the open concrete-lined ditch. During that visit, Hires concluded that the concrete pipe that ran along the eastern border of Chavers’s property and the open concrete-lined ditch on the northern border of Chavers’s property should be repaired. It is undisputed that the repairs recommended by Hires were not performed by the City until September 2008, after Chav-ers had filed a notice of claim with the City and after she had sued the City.
In 2009, the City commissioned Aquater-ra Engineering, LLC, to perform a geo-technical investigation to determine soil and groundwater conditions on Chavers’s property. In a report dated January 14, 2010, Aquaterra noted that groundwater was identified in several places on Chav-ers’s property at a level five to seven feet below the surface. In his deposition testimony, Underwood agreed that there was groundwater below the surface of the land throughout the area around Chavers’s property. Underwood testified that the level of the groundwater varied based on the time and season of the year, and that the groundwater on the property was separate from the City’s drainage system, i.e., that groundwater was present regardless of the City’s drainage system.
Underwood further testified that the ex-filtration of the water from the cracks in the underground pipes on the southern border of Chavers’s property occurred when the storm water in the underground pipe was at a level that was above the groundwater level on the outside of the pipe. In order to determine whether the level of the water in the underground pipe exceeded the level of the groundwater outside of the pipe, the pipes would have to be monitored. Underwood admitted that he did not monitor the pipes to confirm that the level of storm water in the pipe exceeded the level of the groundwater outside of the pipe. He further testified that any water below the surface of Chavers’s property would follow the same down-gradient path to the open concrete-lined ditch to the north of Chavers’s property, whether it was groundwater or groundwater combined with exfiltrated storm water from the City’s underground drainage pipes. Thus, Underwood testified, even if the City’s storm-water-drainage system along Seabreeze Road did not leak at all, the groundwater would still move down-gradient to the north toward the open concrete-lined ditch.
According to Underwood, the “terrible condition” of the open concrete-lined ditch was an “invitation there to lower ground water, to draw the ground water down and increase the ground water gradient from the front of the property to the rear.” Underwood stated that the result was sinkholes, which he described as areas where the ground surface had dropped several feet in some locations. Underwood stated that there was pressure on the groundwater and, as it flowed through the *499 sandy soil on Chavers’s property, it had the capability of moving the sandy soil. Underwood further stated that, even if there had been no infiltration or exfiltration of water as a result of broken pipes along the southern border of Chavers’s property, the sinkholes still would have developed over time because the sandy soil would have moved into the open concrete-lined ditch, causing the subsidence of soils at various locations on Chavers’s property.
In addition to the sinkholes on Chavers’s property, Underwood also testified that he saw photographs of the inside of Chavers’s house and noticed cracks in the walls that, he said, indicated uneven settling of her house. Regarding the cause of the cracks and uneven settling in Chavers’s house, the following exchange occurred:
“Q: Is there any way of knowing whether that uneven settling is a result of any drainage issues surrounding [Chavers’s] property?
“A [Underwood]: I don’t know how you would really separate the two issues, whether it was natural settling or whether the natural settling was exacerbated by a soil loss.
“But certainly we’ve had soil loss all through her property, and I would — I would think it’s a very strong possibility that some of the cracking and uneven settling was a result of the loss of soil beneath her house.
“Q: Would it be fair to say it’s just impossible to know one way or the other whether the drainage system had any effect on the cracking in her house or not?
“A [Underwood]: For me to make a statement that it is impossible to know, I would defer to someone who has spent a career in soils engineering and to see — get their opinion on that.”
James Foster, an engineer for the City who visited Chavers’s property after repairs had been made to the City’s drainage system, testified that the damage he saw on Chavers’s property was limited to an area within 10 feet of the open concrete-lined ditch and the two drainage easements on Chavers’s property. Foster testified that the damage he observed was not caused by the piping of soil but by erosion of the soil at the open concrete-lined ditch. Foster agreed with Underwood’s determination that fine-grained sandy soil had been transported into the ditch as the open concrete-lined ditch had failed and allowed infiltration of groundwater into the ditch. But he disagreed that the damage could be described as “sinkholes” as opposed to “erosion.”
After conducting a hearing, the circuit court entered a summary judgment in favor of the City on Chavers’s remaining claims. In its judgment, the circuit court stated:
“After considering all the evidence set forth in the record in a light most favorable to the nonmovant, with all reasonable inferences drawn in [Chav-ers]’s behalf, the [c]ourt determines that [Chavers] has not sufficiently carried her burden of presenting substantial evidence establishing that the City’s negligence caused damage to [Chav-ers]’s property.
“The [c]ourt can find no evidence presented that establishes a defect in the City’s drainage system or that any of the alleged damage was the proximate cause [sic] of the City’s negligence. [Chavers]’s expert, Mr. Underwood, gave sworn testimony of the ‘possibility that the City’s drainage system caused portions of [Chavers]’s land to erode, which led to sinkholes and other damage to her property. However, the mere possibility that a defective drainage system is the source of [Chavers]’s problems is not enough to hold the City *500 liable for negligence. Furthermore, [Chavers] offers no evidence that a portion of the City’s drainage system was actually defective. The [e]ourt will not infer that the City was negligent based on the evidence in the record.”
Chavers filed a timely postjudgment motion, which the circuit court denied, and Chavers appealed. On appeal, Chavers argues that the City failed to meet its burden of showing that there were no genuine issues of material fact and that it was entitled to a judgment as a matter of law.

Standard of Review

“ ‘A motion for summary judgment is granted only when the evidence demonstrates that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P.’ Reichert v. City of Mobile, 776 So.2d 761, 764 (Ala.2000). To defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence creating a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Our review of a summary judgment is de novo, and we review a summary judgment in the light most favorable to the nonmoving party, applying ‘the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact.’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); System Dynamics Int’l, Inc. v. Boykin, 683 So.2d 419, 420 (Ala.1996).”
Locke v. City of Mobile, 851 So.2d 446, 448 (Ala.2002).

Discussion

Chavers argues that the circuit court erred in entering a summary judgment in favor of the City because, she says, the City failed to make a prima facie showing that there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law. In Locke, the plaintiff alleged that the City had negligently maintained its storm-water-drainage system, which had allegedly caused flooding on the plaintiffs property. Id. at 447. A summary judgment was entered for the City, and this Court stated:
“In order to prevail on its motion for a summary judgment, the City was not required to prove that the flooding was not a result of its negligent maintenance. See Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999).
“ ‘ “If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56[, Ala. R. Civ. P.,] burden of production either by submitting affirmative evidence that negates an essential element in the non-movant’s claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant’s evidence is insufficient to establish an essential element of the nonmovant’s claim.” ’
“Id. (quoting Justice Houston’s special concurrence in Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989), overruling Berner and adopting Justice Houston’s special concurrence in Berner as the accurate statement of the law) (emphasis omitted). The City, as previously noted, submitted excerpts from the depositions of [the plaintiff] and her engineering expert that sufficiently discharged its burden by demonstrating the insufficiency of [the plaintiff]’s evidence on the essential element of her claim — negli *501 gent maintenance as the proximate cause of the flooding. The burden then shifted to [the plaintiff] to present substantial evidence indicating that the flooding was proximately caused by the City’s negligent maintenance. Reichert [v. City of Mobile], 776 So.2d [761,] 765-66 [ (Ala.2000) ]. The issue on appeal is whether [the plaintiff] presented substantial evidence showing that the City’s alleged negligent failure to maintain the drainage system in her neighborhood proximately caused the flooding of her property.”
851 So.2d at 448-49.
In the present case, the City attempted to show that Chavers’s evidence was insufficient to prove that the City’s alleged negligent maintenance of its drainage system was the proximate cause of the damage to her house and yard. To support its motion, the City presented, among other things, the deposition testimony of Underwood, Chavers’s expert. Underwood testified that the cracks in the walls of Chav-ers’s house were an indication of uneven settling and that there was “a very strong possibility that some of the cracking and uneven settling was a result of the loss of soil beneath [Chavers’s] house,” which he attributed to the failed underground pipes along the southern border of Chavers’s property and the failed open concrete-lined ditch along the northern border of Chav-ers’s property. However, Underwood testified that he would defer to someone who had spent their career in soils engineering to determine whether it was possible to know if the City’s drainage system had any effect on the cracking in and uneven settling of Chavers’s house.
Chavers does not challenge the circuit court’s summary judgment to the extent that the circuit court determined that Underwood’s testimony was insufficient to support a finding that the City’s drainage system, particularly the City’s negligent maintenance of the drainage system, was the proximate cause of the cracking and uneven settling of her house. Accordingly, that argument is waived, and, insofar as Chavers’s complaint requests damages for the cracking and uneven settling of her house, the summary judgment in favor of the City is affirmed. See Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111,1124 n. 8 (Ala.2003) (“An argument not made on appeal is abandoned or waived.” (citing Bettis v. Thornton, 662 So.2d 256, 257 (Ala.1995))).
Instead, Chavers argues that substantial evidence was presented showing that the deteriorated condition of the open concrete-lined ditch, specifically the City’s negligent maintenance of that ditch, caused several large sinkholes on her property. Chavers cites the testimony of Underwood, who stated that the terrible condition of the open concrete-lined drainage ditch on the northern border of Chav-ers’s property caused the sinkholes on Chavers’s property by allowing water and soil to infiltrate the drainage ditch, which resulted in a loss of soil from Chavers’s property. Although Underwood testified that this loss would have occurred regardless of whether the underground pipes on the southern border of Chavers’s property leaked, his testimony also indicated that even the natural groundwater under Chav-ers’s property moving down-gradient to the open concrete-lined ditch carried sandy soil with it, which infiltrated the open concrete-lined ditch as a result of the terrible condition of the ditch, thereby causing a loss of soil and sinkholes on Chavers’s property. Therefore, even if the drainage system on the southern border of Chav-ers’s property was not defective, there was substantial evidence to support Chavers’s claim that the defects in the open concrete-lined ditch had allowed the infiltration of *502 groundwater and sandy soil because of its deteriorated condition and was the proximate cause of the sinkholes on her property. Accordingly, the circuit court erred in granting the City’s summary-judgment motion insofar as Chavers’s complaint requested damages based on the sinkholes on her property caused by the City’s alleged negligent maintenance of its drainage system.
The City argues that the summary judgment can be affirmed on the ground that Chavers’s evidence was insufficient to demonstrate that she had suffered damage during the six months preceding the filing of her claim pursuant to § 11-47-28, Ala. Code 1975, the municipal nonclaim statute. In Baugus v. City of Florence, 985 So.2d 413 (Ala.2007), several landowners who owned real property adjacent to a landfill operated by the City of Florence sued the City of Florence seeking damages for nuisance, trespass, and strict liability. The landowners also asserted an inverse-condemnation claim, alleging that the City of Florence’s placement and monitoring of methane-measuring pipes on their properties constituted a taking and/or damage to their properties. The landowners filed a claim with the City of Florence pursuant to § 11-47-23 on March 19, 2002, seeking damages for injuries caused by the City of Florence’s operation of the landfill, the migration of methane from the landfill onto their properties, and the monitoring of methane levels on their properties. The circuit court granted the City of Florence’s motion for a summary judgment on each claim. On appeal, the City of Florence argued that the landowners’ tort claims based on the presence of methane were time-barred because methane had been detected on the landowners’ property no later than 1994. This Court noted that it was undisputed that methane continued to be present on the landowners’ property and that “the issue as to the bar of limitations turns on whether the continuing emission of methane gas within the period on and after September 19, 2001, [six months before the landowners filed notice of claim pursuant to § 11-47-23,] constituted a violation of a legal duty owed the landowners by the City [of Florence].” 985 So.2d at 419. We stated: “When a claim is based on negligent maintenance, each occurrence or recurrence of the injury constitutes a new cause of action.” Id. (citing City of Clanton v. Johnson, 245 Ala. 470, 473, 17 So.2d 669, 672 (1944)). We concluded that, because the landowners’ claims arose
“from the continuous migration of methane onto their properties as a result of the [City of Florence’s] maintenance and ongoing operation of the landfill for a public purpose subsequent to its closure[,] [t]he landowners’ tort claims of nuisance, negligence, and trespass accrue each time the [City of Florence’s] maintenance and ongoing operation of the landfill cause methane to migrate onto the landowners’ property and, thus, those claims are not time-barred.... However, any claims that accrued before September 19, 2001, six months before the landowners informed the City [of Florence] of their intent to sue the City [of Florence], are barred by the municipal nonclaim statute.”
985 So.2d at 421.
In the present case, Chavers alleged in her sworn statement of claim filed in March 2006, which was attached to the City’s summary-judgment motion, that she was suffering damage on a daily and ongoing basis as a result of the City’s negligent maintenance of its drainage system. In her response to the City’s summary-judgment motion, Chavers alleged that the City had a continuing duty to adequately maintain the open concrete-lined drainage *503 ditch; the City did not dispute that allegation. See generally Kennedy v. City of Montgomery, 423 So.2d 187, 188 (Ala.1982) (“Once the authority to construct or maintain a drainage system is exercised, a duty of care exists, and a municipality may be liable for damages proximately caused by its negligence.”). Because Chavers’s claims are based on the continuous migration of water and soil into the failed open concrete-lined drainage ditch as a result of the City’s negligent maintenance of that ditch, we conclude that Chavers’s evidence was sufficient to raise a genuine issue of material fact as to whether she incurred damage during the six months preceding the filing of the notice of claim pursuant to § 11-47-23. However, consistent with our decision in Baugus, we conclude that any of Chavers’s claims for damage that accrued before September 21, 2006 — six months before she filed her notice of claim on March 21, 2006 — are barred by § 11-47-23.
The City also argues that it was entitled to a summary judgment on Chav-ers’s negligent-maintenance claim under § 11-47-190. Pursuant to that statute, Chavers must show that the alleged damage to her property was based on the
“neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body....”
§ 11-47-190, Ala.Code 1975.
The record contains evidence indicating that Chavers repeatedly notified the City of damage to her property, that Hires came to her home after she complained to the City, that Hires noted that the open concrete-lined ditch was in poor condition at that time, that Hires placed dye on her property, and that Hires was aware that the dye made its way underground into the open concrete-lined ditch. After that visit, Hires recommended that repairs be made to certain aspects of the City’s drainage system, including the open concrete-lined ditch. The record indicates that those repairs were not made until well after Chav-ers had filed a notice of claim and had sued the City. This evidence is sufficient to withstand a motion for a summary judgment based on the City’s bare allegation that there was no evidence to support a claim under § 11-47-190.
Chavers has not raised any arguments on appeal concerning the circuit court’s adjudication of her inverse-condemnation claim. Accordingly, the circuit court’s summary judgment as to that claim is affirmed. See Avis Rent A Car Sys., 876 So.2d at 1124 n. 8.

Conclusion

We affirm the summary judgment as to the inverse-condemnation claim and as to the negligent-maintenance, nuisance, and trespass claims insofar as Chavers requested damages based on the cracking and uneven settling of her house. We reverse the summary judgment as to the negligent-maintenance, nuisance, and trespass claims insofar as Chavers requested damages for sinkholes allegedly caused by the City’s negligent maintenance of the open concrete-lined ditch. We remand the cause to the circuit court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, C.J, and BOLIN, MURDOCK, and MAIN, JJ., concur.

. See generally State v. Armstrong, 779 So.2d 1211, 1214 (Ala.2000) (“When the condemning authority seeks to acquire less than all of a parcel of property, the landowner is entitled to 'the difference between the fair market value of the entire property before the taking and the fair market value of the remainder after the taking.’ ” (quoting Ala.Code 1975, § 18-1 A-l 70(b))).

. Chavers’s negligent-maintenance claim arose under § 11-47-190, Ala.Code 1975, which provides, in pertinent part:
“No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation ... unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured."

. Section 11-47-23 provides:
"All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.”
(Emphasis added.)

. In her response to the City’s summary-judgment motion, Chavers stated that Hires placed dye on her property in 2005. The City *498 does not dispute that factual allegation on appeal.